STOCKBRIDGE IRON COMPANY *vs.* CONE IRON WORKS & others.

By a lease of the right of digging ore, the lessee paying half yearly a specified sum for each ton of ore, the lessee covenanted to occupy and improve the ore bed in a proper manner, and take therefrom, from year to year, such quantities of ore as should be considered as improving the same in a good, husbandlike and thorough manner, and to pay for each ton of ore the sum specified; and it was further agreed by and between the parties, their heirs and assigns, that, if the rent should be in arrears three months, or if the lessee should neglect to improve the ore bed in the manner above described, the lessor might reënter and be in as of his former estate. *Held,* that failure by the lessee for sixteen months to work the mine, at a time when it would have been profitable to work it, was a breach of condition for which the assignee of the reversion might enter, and determine the .ease.

After the condition of a lease of a mine had been broken, the lessee abandoned possession, and the lessor by his tenants entered and occupied the surface of the ground, and made a written lease of part of the mine; his agent sent notice to parties who had in former years worked the mine, that the lessor had entered for breach of condition and to determine the lease; and for fourteen years no one had worked the mine under a lease. *Held,* that these facts would authorize a finding that the lessor had entered for breach of condition and determined the lease.

The lessor of a mine may recover as damages, from one who has wrongfully taken ore from his mine, the value of the ore, when such value per ton is less than the royalty per ton paid by the lessee; but the value of the ore is to be estimated as it lay in the bed, and not as it was after its value had been increased by the trespasser's raising it to the surface.

In a suit in equity against a corporation and A. for injury to the plaintiff's land, and praying for an injunction, it appeared that A. was the general agent of the corporation, and that the acts alleged were done by his subordinates and inured to the benefit of the corporation and not of himself. *Held*, that the bill should be dismissed as against A., but without costs.

A bill in equity, alleging that the defendants had made subterranean excavations leading from a shaft on their land under the plaintiffs' adjoining land and had taken ore therefrom, prayed that the plaintiffs, by officers appointed by the court, might have access to the shaft and the excavations therefrom, and might be authorized to make such surveys and explorations and do all such acts as in the premises were proper to be done. The court passed an order appointing viewers, with power to employ engineers and workmen, enter the shaft, examine the excavations, clear the same so far as necessary to ascertain what ore had been taken from the plaintiffs' land, and do all acts that might be reasonably necessary to effect the purposes of the order, the plaintiffs to advance the money necessary for the expenses of the view. The viewers used a shaft and made excavations on and under the plaintiffs' land for the purpose of reaching the drifts wrongfully dug by the defendants. After a decree for the plaintiffs, *Held*, that it was proper to allow in the costs the expenses of the view including the excavations, and a sum for the use of the shaft on the plaintiffs' land, if such excavations were reasonably, though not absolutely, necessary for the view; and that interest to the date of the final decree on the sums advanced by the plaintiffs in payment of said expenses might be also included in the costs.

TORT, praying for relief in equity, by the owners of land in West Stockbridge against the Cone Iron Works, Franklin B. Cone and Robert Pomeroy, for injury to the plaintiffs' land by digging a shaft on adjoining land occupied by the defendants, and thence digging and excavating drifts, caves and openings into and under the plaintiffs' land and taking therefrom large quantities of iron and other ores. The plaintiffs alleged that the defendants concealed the injury and prevented them from entering said shaft to ascertain its amount; sought to recover damages for the injury; and prayed for an injunction and discovery, and that the plaintiffs, by their agents or by proper officers appointed by the court, might have free access into the said shaft and any drifts and excavations accessible therefrom, in order to make full survey of all the excavations into the plaintiffs' land complained of, and might be authorized to make all such surveys, explorations and discovery, and do all such acts, as

in the premises were rightful and proper to be made or done. Writ dated December 28, 1867.

On motion of the plaintiffs, the court passed an order appointing viewers, and empowering them, after hearing the parties, to appoint engineers, and direct the engineers and workmen employed by them to enter the shaft on the defendants' land, clear the water from said shaft by pumping or otherwise, examine all excavations and drifts leading therefrom towards and under the plaintiffs' land, and clear the same so far as necessary to ascertain what iron ore or other mineral had been taken from the land of the plaintiffs and under the surface thereof; and to do all acts that might be reasonably necessary to be done to effect the purposes of the decree. The order further directed that the plaintiffs should advance and pay to the viewers all the money necessary to be expended in the work, and should pay the viewers for their reasonable charges and expenses, to be finally settled by the court.

After the view, the case was referred to G. F. Hoar, Esq., as a master, who reported that the Cone Iron Works had trespassed on the plaintiffs' land and taken ore therefrom; that Cone was the general agent of said Works, and all the acts and trespasses committed by said Works were done by subordinate agents acting under him, and inured wholly to the advantage of said Works; and that Pomeroy had no part in any of the said acts or trespasses. The master, at the request of the parties, abstained from passing upon the question of concealment by the defendants, and upon the question of costs or of the liability for expenses of the view. The other facts found by him are stated in the opinion.

*S. W. Bowerman & W. H. Swift,* for the plaintiffs.

*H. L. Dawes & T. P. Pingree,* for the defendants.

CHAPMAN, C. J. The plaintiffs are the owners of a tract of land called the Leet farm, and formerly owned by Nathaniel Leet. It bounds easterly by land of the Cone Iron Works, the line being the centre of the Benton road, so called. In August 1826, Leet, being then the owner of the farm, made a lease to Isaac Nicholson and Eli Richmond, for nine hundred and ninety-

nine years, of the right of digging ore in a lot of land described by metes and bounds, and being a part of the farm, bounding on the Benton road, and containing the Leet ore bed, so called; also the right of drawing and depositing the ore on the lot, and of ingress and egress thereon for the purposes aforesaid — yielding and paying therefor every year, half yearly, the sum of thirty-seven and one half cents for each and every ton of ore dug on the premises. The lessees covenanted to occupy and improve the ore bed in a proper manner, and dig and take therefrom, from year to year, such quantities of ore as should be considered as improving the same in a good, husbandlike and thorough manner, and keep a true account of the ore they should dig, and for each and every ton of ore, when the same should have been weighed and taken from the premises, to pay the sum named. They also covenanted to keep up the fences; and it was agreed that if the rent should be in arrears and unpaid for the space of three months, or if the lessees should " neglect to improve said ore bed in the manner above described," or underlet without the consent and approbation of the lessor, he might reënter the premises, and again have, repossess and enjoy them as of his first estate. The covenants of each party were made for themselves, their heirs and assigns.

Between the year 1865 and June 2, 1867, and long after the plaintiffs became owners of the title of Leet, the defendants sank a shaft on their land near the Benton road, and, by means of excavations underground, obtained a large quantity of ore from the Leet ore bed, and from the farm northerly of the leased land. The report finds that this was not done wilfully, but by gross negligence, and states the quantity and value of the ore thus taken. No question is raised as to the liability of the Cone Iron Works for the injury done to the plaintiffs' land not included in the lease; but it is contended that, as to the premises included in the lease, the plaintiffs have only a reversionary interest, and cannot maintain this action.

The master finds, subject to the opinion of the court, that, at the time of the taking of the ore by the defendants, the plaintiffs were the owners of the Leet ore bed, subject only to a lease

of a part of the same which they had made to one Pierson, and that they were in possession of the lot by their tenants. This implies that the lease to Nicholson and Richmond had been terminated. The plaintiffs contend that the lessees and their assigns forfeited the estate by breach of the condition contained in the lease, and that the plaintiffs had a right to terminate it, and have done so. The defendants, on the other hand, contend that no one but the lessor and his heirs had power to take advantage of a breach of the condition, and terminate the estate for forfeiture; and, even if the plaintiffs had the right, they have done no act that is sufficient to terminate it.

It is true that, by the common law, only the grantor or his heirs or executor could enter for breach of a condition. Comyn, Landl. & Ten. 285. *Rice* v. *Boston & Worcester Railroad Co.* 12 Allen, 141. But by the St. of 32 Hen. VIII. *c.* 34, an assignee of a lessor's estate may have the same remedy. He cannot take advantage of a breach of every condition; for the statute is held to refer only to conditions to do anything incident to the reversion, and not to conditions to do or not to do collateral acts. Comyn, Landl. & Ten. 286. The distinction is thus expressed in Co. Lit. 215 *b*: "The grantees or assignees shall not take the benefit of every forfeiture by force of a condition, but only of such conditions as either are incident to the reversion, as rents, or for the benefit of the estate, as for not doing of waste, for keeping the houses in reparations; for making of fences, scouring of ditches, for preserving of woods, or such like; and not for the payment of any sum in gross, delivery of corn, wood, or the like; so as other forfeiture shall be taken for other forfeitures, like to those examples which were there put [that is, in the statute] of payment of rent, and not doing of waste, which are for the benefit of the reversion." Underletting without consent has been held to be not within the statute.

It was not contended at the argument that the lease was forfeited for underletting without consent, though this ground was taken at an earlier stage of the case; but it is contended that the lease became forfeited by a breach of the covenants respecting the payment of rent.

The report finds that, from 1854 until May 1867, there was **no** ore taken from the Leet ore bed, and no mining operations were carried on thereon except by the defendant corporation, as hereafter stated, which was not a taking under the lease, but was tortious. It would not have been profitable to mine the ore bed at the stipulated royalty during any part of the time from 1854 to the end of 1861; but from January 1862 to May 1863 it would have been profitable.

The terms of the lease were unlike those of the lease stated in *Jones* v. *Shears*, 7 C. & P. 346, cited by the defendants' counsel. The lessees in that case were to work the mine so long as it was fairly workable; and it was held that under those words they were not obliged to work at a dead loss. But the lease in this case required the lessees to dig and take the ore and pay the royalty from year to year, without making any reference to profit or loss, and the rent was payable semiannnally. The improvement of the mine in a good, husbandlike and thorough manner evidently refers to the manner of carrying on the business, so as to secure a reasonable rent. And certainly the neglect to carry it on from January 1862 to May 1863, while it would have been profitable to the lessees, and thereby depriving the landlord of all rent, was such a breach of condition as subjected the estate to forfeiture.

But it is contended that, even if this were so, the plaintiffs have done nothing to regain the estate.

After the action of *ejectione firmæ* was superseded by the action of ejectment in England, an actual entry for forfeiture was treated as a mere matter of form, and became unnecessary. In order to be admitted to defend, the tenant was obliged to confess it in his pleadings by admitting the fictitious statement contained in the declaration. But in this Commonwealth some act is held to be necessary. There must be an entry or possession with intent to hold the property for forfeiture; and there must be some manifestation of this intent. *Stone* v. *Ellis*, 9 Cush. 95. *Hubbard* v. *Hubbard*, 97 Mass. 188. The facts found by the master are sufficient to authorize him to find both the possession and the expression of the intent. The lessees

abandoned the possession, and the plaintiffs entered, and occupied the surface of the ground by their tenants, thus cutting off the lessees' access to the ore, and made a written lease of a portion of the mine to Pierson. In May 1863, their agent delivered to an agent or one of the owners of the Lenox Iron Company, and to the bookkeeper in the office of the Richmond Iron Company, a notice that the plaintiffs had entered for a breach of the conditions of the lease, and to terminate the same. These companies had worked the mine previously to 1854. It does not appear whether other parties had ever worked it under the lease, but since 1854 no one had worked it. No parties appear to have worked it down to the present time, as lessees, and no parties except the Cone Iron Works have claimed title as lessees; and their only claim of title is under a lease from several of the heirs of Eli Richmond, dated June 24, 1867, after the defendants had ceased to take ore from the mine, and including three fourteenth parts of the lessees' interest. The court are of opinion that the finding of the master was warranted by the facts proved.

The lease to Pierson constitutes no objection to the present action; for the value of the ore per ton, as found by the master, is less than the royalty which the plaintiffs were to receive from Pierson. The injury to their reversionary interest is therefore at least equal to the damages which they will recover under the finding.

The result to which we are thus led is, that the plaintiffs are entitled to recover against the Cone Iron Works, on the ground that the taking of the ore and the injury done to the property were tortious; and they are also entitled to have the injunction made perpetual. The value of the ore is to be estimated as it lay in the bed, and not as it was after the defendants had increased its value by removing it. To this is to be added the damage done to the real estate. The plaintiffs are also entitled to costs, including the expense of the view.

The bill is to be dismissed as to the defendant Cone, but without costs, as it was his duty, he being the defendants' agent, to prevent the workmen from digging beyond the defendants' line.

As to the defendant Pomeroy, the bill is to be dismissed with costs.  *Decree accordingly.*

After the entry of a decree in accordance with the above opinion, costs were taxed by the clerk, and from his taxation the defendants appealed. The only items, the allowance of which was objected to, were the expenses of the view, amounting to $4841.07, which had been advanced by the plaintiffs, and interest on this amount from the time it had been so advanced until the date of the final decree.

At the hearing of this appeal at September term 1870, before *Gray,* J., it appeared that the operations of the view had been carried on at the plaintiffs' request; that to reach and examine the places of the alleged trespass the plaintiffs proposed to make an excavation from a shaft on their own land near the Benton road; that the viewers deemed that it was the wisest and best course to permit the plaintiffs to do the work, and it was reasonable that this excavation should be made; and that the expenses of the view, as stated in the item of costs, included a sum allowed to the plaintiffs for the use of their shaft and the machinery connected therewith, and also all the actual expenses of the operations, as well as allowances to the viewers for their personal services.

One of the viewers was a witness at the hearing, and, on being asked " whether the viewers merely permitted these operations, or whether they authorized them to be carried on as absolutely essential to the execution of the order of the court," answered that, " so far as he could now at this period tell what the operations of his own mind were, the explorations and excavations were made at the request of the plaintiffs, and the viewers permitted them to make the explorations and excavations which they requested, and which seemed to the viewers to afford probably some light on the case, without deciding whether it was absolutely necessary that they should be made." He also testified that all the moneys expended by the viewers, and included in the item of costs objected to, were judiciously and economically expended.

The defendants contended that the authority given to the plaintiffs to examine the mine by viewers was permissive only, and the expenses incurred thereby were of the nature of preparation for trial, by discovery and collection of evidence, and not allowable as costs; that the services and personal expenses of the viewers were all that could be recovered as costs; and that, at any rate, the expense of investigations on the plaintiffs' own land, (including the charge for use of the shaft,) which they could have made without any order from the court, ought not to be allowed.

But the judge found as matter of fact that all acts included in the expenses as taxed by the clerk were reasonably necessary to effect the purpose of the order appointing viewers, and affirmed the taxation, with costs. The defendants objected that the evidence did not as matter of law warrant the finding, and appealed to the full court.

*T. P. Pingree,* for the defendants.

*S. Bartlett,* for the plaintiffs.

CHAPMAN, C. J.   The defendants' counsel contends that the evidence did not as matter of law warrant the finding of the justice who heard the cause on the appeal from the master's taxation of costs; and he refers not only to the order appointing the viewers, but to the bill itself, as sustaining his position, on the ground that the viewers were not authorized to order all the explorations that were made by their direction. But this position is not sustained by reference to the bill and order. The plaintiffs complain that the defendants dug a shaft on their own land, near the line of the plaintiffs' land, and thence excavated drifts extending underground into the plaintiffs' land, and took out the ore which they found there. They ask that these drifts may be viewed. The order directs not only that the drifts may be examined by pumping the water out of the shaft and going into it, and that the drifts may be examined which lead towards the plaintiffs' land, and also those which are under it, but that they may be cleared so far as may be necessary in order to ascertain what iron ore or other mineral has been taken from the land of the plaintiffs and under the surface thereof, and that the

viewers may do all acts that may be reasonably necessary to be done to effect the purposes of the decree. If the viewers found that it would facilitate and cheapen their explorations to excavate an entrance to one of the drifts which they had discovered by digging from the surface of the plaintiffs' land, it would be proper to do so, within the terms of the order and the prayer of the bill.

The master's report finds that the defendants took a very large quantity of iron ore (being 6640 tons) from the plaintiffs' land by means of these underground passages; and though it was not done wilfully, yet they were guilty of gross negligence in not taking proper precautions to avoid digging or carrying away ore from the plaintiffs' land. This result tends to show the importance of the view; and moreover it is to be presumed that the proceedings of these officers of the court were proper, unless the contrary appears. The testimony of the viewer, at the hearing, that the viewers ordered the explorations without deciding that it was absolutely necessary that they should be made, is referred to by the defendants' counsel, who contends that the expense of making the explorations should not be allowed because they were not necessary. But it need not appear that they were absolutely necessary. It is sufficient if they were reasonably necessary ; and it sufficiently appears that they were so.

It is contended that the power of the court in allowing costs depends on Gen. Sts. *c.* 156, § 16, and that this section does not authorize the allowance of these expenses. But courts of law have power to allow the reasonable expenses of surveys and views in proper cases, and the fee bill does not apply to the expense of such proceedings. Mines are so situated that special and peculiar proceedings are sometimes necessary in order to attain the reasonable ends of justice in regard to the underground passages by which access to them may be obtained by trespassers.

It is contended that the court has no power to allow interest on the moneys expended under the order for the view. The sum thus expended was large, and must be advanced before-

hand; and the case has been delayed a long time; and though it is never the practice to allow interest on fees taxed according to the fee bill, yet we think the court has power to include interest on money advanced as a necessary part of the expense of the view in a case like the present, and that it is equitable to make such allowance.　　　　　　　　　　*Taxation of costs affirmed.*