**In re UTILITIES POWER & LIGHT CORPORATION.**

**CLARKE et al. v. UTILITIES POWER & LIGHT CORPORATION et al.**

**No. 6228.**

Circuit Court of Appeals, Seventh Circuit.
June 10, 1937.

Roy D. Keehn, of Chicago, Ill., C. K. Welsh, of Rockford, Ill., Don Kenneth Jones, of Chicago, Ill., for appellants.

Charles LeRoy Brown, Nathan S. Blumberg, and Jacob Logan Fox, all of

Chicago, Ill., for appellee Atlas Corporation.

Meyer Abrams, of Chicago, Ill., for appellee Grace Stein Weigle.

Dwight H. Green and Walter Brewer, both of Chicago, Ill., for appellee Utilities Power & Light Corporation.

Robert McCormick Adams, Burke Williamson, E. Douglas Schwantes, and Paul S. Davis, all of Chicago, Ill. (Murry Nelson, of Chicago, Ill., of counsel), for appellee James L. Houghteling.

Before SPARKS and MAJOR, Circuit Judges, and LINDLEY, District Judge.

LINDLEY, District Judge.

Appellants, as intervening creditors, appeal from an order of the District Court entered in a reorganization proceeding under section 77B of the Bankruptcy Act as amended (11 U.S.C.A. § 207), appointing an investigator to investigate and report to the court in aid of administration of the estate. Appellees include the debtor, the Atlas Corporation, the appointee and an intervening creditor.

Appellants insist that there is no warrant in law for the appointment of an investigator and that to act upon his report would be to deprive appellants of proper judicial hearing. Appellees seek to justify the order upon the ground that there is ample authority in the bankruptcy act as well as in the precedents in equity for the appointment of such an officer of the court; that the order threatens no extrajudicial action by the court and in no wise deprives appellants of a judicial hearing in the true sense of the word; and that the condition of the estate is such that the discretion of the court was wisely exercised in making the appointment of its own motion for its own guidance as to what is proper to be done in the administration of the estate.

Three of appellants filed an involuntary petition for reorganization of the debtor on September 24, 1936, in the Western Division of this district. On November 12, 1936, the debtor answered, denying petitioners' good faith. The cause was transferred to the Eastern Division. On December 31, 1936, the involuntary petition was dismissed but on the same date reinstated. Other proceedings, some three in number, had been instituted against the debtor in the state and federal courts of Virginia, the domicile of the debtor. These included a bill in equity by stockholders to enjoin the corporation from certain acts, a bill for the appointment of a receiver, and a creditors petition under section 77B. Confronted with this situation, the debtor filed its voluntary petition in the District Court in Chicago on January 4, 1937, reciting the institution of the various suits, alleging that it was not insolvent; that it had committed no acts of bankruptcy; that damaging unfounded charges were being made against it; and that as a result, the good will of the debtor had been seriously impaired, the confidence of investors in its securities shaken, and reorganization rendered impossible except by aid of the court.

The court approved the petition as properly filed, and on January 9 directed that the debtor remain in possession temporarily. Later, after appropriate notice to all parties in interest, at a hearing in which both appellants and appellees participated, there was presented to the court a statement of assets and liabilities and information concerning the qualifications of the directors. It appeared that the majority of the voting stock was then and had been for some time within the jurisdiction of the court because of the pendency of proceedings for reorganization of Webster Securities Corporation and Public Utilities Power & Light Corporation, holding voting control of the debtor, for which the court had appointed trustees. The directors of the debtor had been selected after their names had been submitted to and approved by Judge Holly. Charges and counter charges of wrongdoing were prolific. The court concluded, at the suggestion and request of the majority of those represented, that a trustee should not be appointed, but that the debtor should remain in possession, apparently concluding that the morale of the corporate organization and the continuity of its business could best be realized and preservation of its assets, efficient administration and expeditious reorganization promoted by such action. Apparently the only objections were those of appellants, who offered no evidence.

The court entered the order on February 26, 1937, and at the same time the order complained of. After calling attention to the charges and counter charges made in open court and commenting that the interests of stockholders and creditors were involved and that the court needed such aid as might be derived from an independent investigation, the judge remarked further that what the court was en-

deavoring to do was to have made an investigation, as had been requested by counsel for appellants. The court announced that after the investigation had been made, he might go further and investigate through the United States attorney's office but that he was not yet ready to refer anything to a master, both of which courses had been proposed by appellants.

The officer named was directed to examine into the charges of wrongful disposition of property by the debtor and its directors, the purchase and settlement of claims against the estate, the dissipation or misuse of assets by any officer or director and the efficiency of the debtor's management and that of its affiliates.

 Under bankruptcy power, the District Court, upon the filing and approval of the petition under section 77B of the Bankruptcy Act, obtains exclusive jurisdiction over the debtor and the property wherever located owned by it or in its possession; including authority to determine all controversies with regard to the same, to marshal the assets, to determine all issues, settle claims and to do all other things necessary or incident to a complete administration of the assets and the estate. It is the purpose of the amendment, as a remedial act, to afford a speedier, more efficient means for reorganization of embarrassed corporations than formerly existed, the elimination of multiplicitous legislation and the prevention of delay. In exerting jurisdiction under the same, the court sits as in equity and is governed by equitable principles. The act permits the court to appoint a trustee or to continue the debtor in possession but endows the court with complete dominion over the property. The act expressly authorizes the court to appoint a reorganization manager and endows it with all the powers that a court of equity might exercise in an "equity receivership."

 It has long been the rule that courts of equity administering estates may call to their help commissioners, auditors, accountants, appraisers, examiners or masters. This power is one growing out of judicial necessity in order to achieve equity, and its exercise is based upon a finding, under rules of legal discretion, that, without aid to the court, the issues cannot be dealt with intelligently, efficiently or promptly. In other words, courts of equity must necessarily, in cases within their jurisdiction, "expand upon conservative lines to meet exigencies created" by the

conditions faced, to the end that a complicated case may be intelligently presented to and understood by the ultimate tribunal. Fenno v. Primrose, 119 F. 801 (C.C.A. 1); Destructor Co. v. City of Atlanta (D.C.) 232 F. 746; Cy. C. of Fed. Proc. 1928; Burnrite Coal Co. v. Riggs, 274 U.S. 208, 47 S.Ct. 578, 71 L.Ed. 1002; Thiede v. Utah, 159 U.S. 510, 16 S.Ct. 62, 40 L.Ed. 237. In the language of the Supreme Court, "courts have (at least in the absence of legislation to the contrary) inherent power to provide themselves with appropriate instruments required for the performance of their duties," including authority to appoint persons to aid the court in the performance of special administrative or judicial duties. Ex parte Peterson, 253 U.S. 300, 40 S.Ct. 543, 547, 64 L.Ed. 917. Cases applying the rule are: Stockbridge Iron Co. v. Cone Iron Works, 102 Mass. 80; Kimberly v. Arms, 129 U.S. 512, 9 S.Ct. 355, 32 L.Ed. 764; Harmon v. Best, 174 Ind. 323, 91 N.E. 19; Destructor Co. v. City of Atlanta (D.C.) 232 F. 746; In re Hotel Martin Co. of Utica, 83 F.(2d) 233 (C.C.A. 2); Oklahoma Gas & Elec. Co. v. Bates Expanded Steel Truss Co. (D.C.) 34 F.(2d) 547; St. Paul Fire & Marine Ins. Co. v. American Food Products Co., 21 F.(2d) 733 (C.C.A.8); Irving Trust Co. v. Trust Co. of New Jersey, 75 F.(2d) 280 (C.C.A.2). Such jurisdiction, it would seem needless to say, is dependent upon the sound discretion of the trial judge.

This power is the same species as that under which the court, of its own motion, appoints amici curiæ. Equity jurisdiction there gives full recognition to the doctrine upon the ground that it is for the public welfare that the judge shall be well informed in those matters in which he renders public service. The Claveresk (C.C.A.) 264 F. 276; In re Perry, 83 Ind.App. 456, 148 N.E. 163; Robinson v. Lee (C.C.) 122 F. 1010; Lee v. Robinson, 196 U.S. 64, 25 S.Ct. 180, 49 L.Ed. 388. The functions of such officers have been extended to cover questions of fact as well as law. Robinson v. Lee, supra. The Supreme Court of the United States recently followed this rule, appointing amicus curiæ of its own motion in Myers v. United States, 272 U.S. 52, 47 S.Ct. 21, 71 L.Ed. 160.

 Here the estate was involved. The court was in control of the internal workings of the debtor corporation through reorganization proceedings of corporations

holding control of the stock. It faced charges against the directors approved by it and countercharges that one of appellants had converted substantial parts of the debtor's estate. In the Northern District of Illinois, the judge sits in a busy court where congestion of litigation is constant. Here the property of the estate involved the administration, management, and reorganization of some ninety millions of dollars worth of property. There was in such facts complete justification in following the precedents.

Nor have appellants been denied judicial determination of any issue. That courts may appoint auditors, investigators, and examiners has never been known to and does not necessarily affect in the slightest degree the rights of the parties to judicial hearings. The reports of investigators and examiners are for the benefit of all parties; the parties making them may be subjected to cross-examination. In other words, what use and effect shall follow the information obtained from the officer appointed by the court are not now before us. We shall not assume, and indeed have no power to assume, in advance of determination of any controverted question that any party's legal rights will be infringed or impaired.

We find no error in the order of the court or any abuse of the court's discretion.

Accordingly the order of the District Court is affirmed.