NATIONAL LOCK CO. v. HOGLAND et al.

No. 6554.

Circuit Court of Appeals, Seventh Circuit.

Oct. 3, 1938.

On Rehearing Feb. 8, 1939.

Otis F. Glenn, R. G. Real, and J. Roy Browning, all of Chicago, Ill., and Carl Solomonson, of Rockford, Ill., for appellants.

Floyd E. Thompson, Henry J. Brandt, and Edgar J. Schoen, all of Chicago, Ill., and Karl C. Williams, of Rockford, Ill., and Charles LeRoy Brown, of Chicago, Ill., for appellee.

Before SPARKS, MAJOR, and TREANOR, Circuit Judges.

TREANOR, Circuit Judge.

This appeal arises out of a suit in equity which was filed in the District Court by the National Lock Company, appellee, against Frank G. Hogland, Gust Anderson, as trustee, H. T. Grenberg, and A. J. Strandquist, appellants, and certain other named defendants. The purpose of the suit was to recoup the amount of certain funds which the complaint alleged had been withdrawn unlawfully from the National Lock Company's treasury and appropriated to the personal use of defendant Hogland; the liability of Hogland's co-defendants being predicated upon their alleged aiding and abetting of Hogland in such unlawful appropriation. A decree was rendered below substantially in conformity with plaintiff's prayer.

The plaintiff corporation is organized under and pursuant to the laws of the state of Delaware and the defendants are

citizens of the state of Illinois. The defendant Hogland was president of the plaintiff corporation, a member of the Board of Directors and a stockholder during the period of the alleged illegal withdrawals of the corporation's funds. The defendants Grenberg and Strandquist were members of the Board of Directors and stockholders of the plaintiff corporation during the same period. The remaining defendant-appellant, Gust Anderson, was a member of the Board of Directors for a portion of such period and was a stockholder for the entire period. Also Anderson was for the entire period trustee of a trust created by defendant Hogland, the trust fund consisting of Hogland's personal assets to be utilized for the payment of Hogland's personal debts. Certain of the alleged unlawful withdrawals were traced into the Hogland trust assets.

It is undisputed in this cause that funds of the plaintiff corporation were withdrawn from its treasury and transferred to defendant Hogland in the form of loans. These funds were withdrawn with the knowledge of, assent thereto, and under the authorization of all of the defendants who were members of the Board of Trustees of plaintiff corporation. All such transactions were carried on in the state of Illinois and were in violation of the Delaware Corporation Act under which the plaintiff corporation was organized, and of a resolution of the Board of Directors of plaintiff corporation.[1]

The trial court held that the Delaware law was applicable and that the conduct of the defendants in respect to the withdrawal of funds of plaintiff corporation constituted a violation of their legal duty to the corporation. It is not contended by defendants that the trial court erred in holding that the Delaware law was applicable.

The alleged illegal withdrawals of funds for the benefit of Hogland commenced on the 2nd day of January, 1929, and continued through the year 1932. De-

fendants admit that as a result of the advances made to Hogland the amount of $169,129 is due the plaintiff from Hogland.

The trial court by its finding and decree fixed the principal sum due from defendant Hogland in the amount of $470,273.41. In fixing the foregoing sum the court refused to allow as credits three contested items consisting of the following: (1) Bonus credited to Frank G. Hogland on July 17, 1929,—$15,000; (2) bonus credited to Frank G. Hogland December 30, 1929, —$200,000; (3) common stock dividends credited on the account of Frank G. Hogland December 31, 1930,—$65,622.

The special master stated as a conclusion of law that the action of the Board of Directors of the plaintiff corporation in voting the bonuses in question constituted misappropriations of the funds of the corporation and that such misappropriations were unlawful gifts of corporate funds to the defendant Hogland. This conclusion followed the finding of facts relevant thereto and the District Court adopted the finding of facts and the conclusion of law of the Master.

An examination of the evidence compels the conclusion that the evidence was sufficient to support the facts as found, and we are of the opinion that the conclusion of law as stated by the Master, and adopted by the court, is correct.

The evidence justifies the inference that there was no agreement, express or implied, on the part of the corporation to pay the bonuses in question to defendant Hogland, and it was a reasonable inference from the evidence that the purpose of the declaration of the bonuses was to relieve defendant Hogland from his obligation to repay to the corporation the funds which had been advanced unlawfully to him. Neither of the bonuses was paid in cash but was in the form of paper credit on the account of defendant Hogland. The record respecting the $15,000 bonus consists of a voucher without any record authorization in the minutes of a Director's

[1] The general corporation law of Delaware, Rev.Code 1935, § 2068, pursuant to which plaintiff corporation was formed, provides as follows: Section 36. "No corporation created under this Chapter shall make any loan of money to any officer of such corporation, nor shall any loan be made to a stockholder upon the security of the stock of the corporation, and if any such loan be made, the officer or officers who make it or assent thereto shall be jointly and severally liable until the repayment of the sum so loaned with interest." In harmony with the foregoing the corporation's Board of Directors passed a resolution providing that "no officer, stockholder or employee of the company shall withdraw funds from the company or be advanced any funds for personal use."

meeting. The voucher bears the date of July 17, 1929, and the amount is the same as the amount of an advance made to the defendant on June 29, 1929. The $200,000 bonus was voted by the Board of Directors on December 26, 1929, and is in the same amount as an advance which was made to the defendant in the preceding June. The $200,000 bonus resolution recited that the matter had been called to the attention of the Board of Directors by a resolution adopted January 29, 1927; that the bonus was being voted "in appreciation of and as a reward for valuable services and efforts made during the past years"; and that the services referred to were those of Hogland "as general manager and as an officer of the corporation."

An examination of the resolutions of the Board of Directors of January 29, 1927, reveals that the services therein referred to related to services in promoting the organization of appellee corporation, and especially for efforts in effectuating the sale of assets of an Illinois corporation to the present Delaware corporation, the plaintiff.

It also appears from the record that in 1928 the Board of Directors of plaintiff corporation caused suit to be instituted in the state court against the present defendant Hogland. In answer to the charge that Hogland had been over-compensated for his services Hogland alleged that the compensation paid him was "fair, reasonable and just for the work and efforts that he gave the corporation in the capacity in which he served." His salary for the year 1924 was $48,000, and for the years 1925, 1926, and 1927 he received $60,000 per annum. While the foregoing suit was pending a new Board of Directors was elected, and this Board approved a settlement of the suit by payment of $100 to the corporation by Hogland. A decree of court was entered May 23, 1929, which approved and confirmed the compromise and settlement; and in respect to the question of compensation for services, the decree recited that "the services of the defendant, Hogland, during the time he was paid a salary of $48,000 per year, were of the reasonable value of $48,000 per year, and during the time he was paid a salary of $60,000 per year his services were of the value to the said corporation of said $60,000 per year."

The foregoing tends to discredit the recital in the bonus resolution that the payment of bonus was "in appreciation of and as a reward for valuable services and efforts made during the past years." And while defendants urge that services during the year 1929 are comprehended by "past years" the minutes of the Board of Directors disclose that at the same meeting at which defendant Hogland was voted a bonus of $200,000 for services and efforts made during the "past years" the Board took special notice of his services for the year 1929 by voting a retroactive salary increase of $18,000 for the year 1929.

Also it appears from the record that the same directors who voted to advance the $200,000 to defendant Hogland in June also voted to pay him the bonus of $200,000 in the meeting of December 26, 1929. Since the Directors who participated in the unlawful appropriation of corporate funds were legally responsible for the repayment of the same, they voted for cancellation of their liability, if at the time of the voting of the bonus they understood it was to be credited to defendant Hogland's account. Regardless of whether, as plaintiff contends, the Directors were barred, because of their interest, from participating in the bonus action, at least the trial court could not ignore the unusual situation in determining whether or not the resolution to pay the bonus represented a good faith payment for services to the corporation; or whether it was merely a fraudulent device to avoid the legal consequences of the unlawful advances to defendant Hogland.

The Special Master found that during the period covered by the transactions involved in this cause the defendant, Frank G. Hogland, to a large extent, directed the affairs and activities of the plaintiff corporation. The Board of Directors for the year 1929 was "favorable" to Mr. Hogland, and although from and after January 1, 1930, defendant Gust Anderson, as trustee of the Hogland Trust, owned a majority of the stock of National Lock Company, the evidence discloses that such stock was voted by defendant Frank G. Hogland. It is necessary for this court to recognize that the evidence was sufficient to justify the trial court's concluding that the defendant Frank G. Hogland, with the aid and cooperation of his co-defendants, controlled the affairs of the National Lock Corporation throughout the period during which the transactions which were material to this cause took place. Also the evidence justi-

fied the trial court's concluding that, as respects the transactions material to the instant suit, Hogland and his co-defendants disregarded their duties to National Lock Corporation for the purpose of protecting the personal interest of defendant Hogland. The evidence fairly supports the inference that the bonus transactions were carried out solely for the purpose of creating credits against defendant Hogland's obligations to the corporation arising out of the unlawful appropriation of its funds, and to protect the co-defendants, who participated in the unlawful advances to defendant Hogland, from their liability resulting from the authorization of the advances.

■ Defendants correctly urge, with supporting authority, that "A court of equity will not, as a general rule, administer the internal affairs of a foreign corporation." Chicago Title & Trust Co. v. Newman, 7 Cir., 187 F. 573, 576; Rogers v. Guaranty Trust Co., 288 U.S. 123, 53 S.Ct. 295, 77 L.Ed. 652, 89 A.L.R. 720. And although they do not insist that a court of equity is without power to interfere with the internal affairs of a private corporation in case of transactions involving fraud or impropriety, the defendants do insist that "since there is no charge of fraud or impropriety in the Bill of Complaint as to the bonus payments, and since those payments constitute internal affairs of a private corporation, a court of equity lacks jurisdiction to regulate them and to grant any relief in connection therewith." But granting that there is no charge of fraud or impropriety in the Bill of Complaint as to the bonus payments, the issue of fraud and impropriety in respect to the bonus payments became a material question when the defendants claimed credit for the amount of the claimed bonuses against the plaintiff's claim for the amount of the alleged unlawful appropriation of funds of the corporation. We think that the trial court, sitting as a court of equity, had jurisdiction to determine the issue of fraud and impropriety in respect to the claimed bonus credits.

■ The dividend of $65,622 for which defendants claim credit was authorized at a meeting of the Board of Directors on December 30, 1930. In respect to defendants' claim the trial court's conclusion of law was that the declaration of the dividend was "ultra vires of the corporation and was unlawfully charged to the surplus account contrary to the provisions of the previous resolution of the Board of Directors." The conclusion of law is based upon (1) a finding that the Board of Directors passed a resolution in 1924 which provided "that thereafter no dividends should be charged to the permanent surplus fund created by the said resolution," and (2) the finding that "no further resolution of the Board of Directors of the plaintiff corporation appears authorizing the charging of any further dividends to the permanent corporate surplus account. * * *"

The resolution referred to was adopted in 1924 and contained the following provision: "* * * balance of the surplus fund * * * (shall) be transferred to a permanent surplus fund for plant and plant equipment and as a safety fund and from which no dividend shall be paid." The fund thus created was to be augmented by one-third of the balance of annual net profits after, deductions for payment of dividends on outstanding preferred capital stock.

The creation of the "permanent surplus fund" for the purposes enumerated was a question of policy entirely within the discretion of the Board of Directors and could have been nullified by formal action of the board at any time. The prohibition of payment of dividends from the "permanent surplus fund" was discretionary with the Board, and the Board was not bound forever to refrain from charging dividends to such fund. The Board being under no legal duty to continue to build up the permanent surplus fund, or to refrain indefinitely from charging dividends to it, had the power to revoke either the augmentation provision or the prohibition against payment of dividends. Instead of striking out or amending the dividend provision, the Board merely declared a dividend and ordered it charged to the surplus fund. This action was contrary to the unrevoked previous resolution and to that extent was irregular. But such action was not void. A Board of Directors cannot increase or decrease corporate powers; and no action of a Board of Directors which the corporation has the power to perform through its directors can be ultra vires of the corporation merely because the board previously has declared by resolution that such action will not be taken.

■ Assuming that the dividend validly could have been charged to the permanent

surplus fund, if the Board of Directors first had nullified the prohibition of the resolution of 1924, we are of the opinion that the Board had the power to make it a valid charge on the "permanent surplus fund" without formally suspending or repealing the previous prohibition. The declaring of the dividend as a charge on the surplus fund was in law a suspension by the Board of Directors of the restriction which the Board previously had imposed upon its discretion.

Plaintiff's argument goes beyond the foregoing and necessarily implies that the Board of Directors was without power to declare a dividend as a charge upon the "permanent surplus fund" regardless of any previous suspension or revocation of the restriction by formal action of the Board. The plaintiff contends that the resolution of 1924 "dedicated to the capital of the corporation" the "permanent surplus fund"; and that "the surplus so dedicated immediately became vested as a part of the trust funds of appellee (plaintiff) to be maintained by appellee for the benefit of all those with whom it came in contact,— its creditors, its preferred stockholders and its common stockholders."

If the "permanent surplus fund" was impressed with the character ascribed to it by plaintiff it became in fact and in law corporate capital in the technical sense. But we cannot attach that consequence to the resolution of the Board of Directors. The resolution contains no express declaration of an intention to convert the "permanent surplus fund" into cash capital; no requirement that the surplus fund be transferred to capital account. On the contrary the "fund" is to continue "permanent surplus fund" and was carried in "earned surplus" account as a "liability". The annual statement at the close of the year 1929 shows $673,803.14 in the "earned surplus account". The resolution authorized the use of the surplus fund for investment in "plant and plant equipment"; but the "permanent surplus fund" was to be used also "as a safety fund". The resolution left to the Board's discretion the question of how much of the surplus fund should be invested in "plant and plant equipment" and how any balance should be utilized "as a safety fund". Plaintiff

assumes that all the accumulated surplus fund was reflected partly in the fixed assets of the corporation and partly in a capital asset of patents and good will valued at some $894,000, as shown by the balance sheet for 1929. But the same balance sheet shows cash on hand in banks in the sum of $304,265.17, in addition to notes and accounts receivable in the sum of $543,829.79. In the absence of a showing that any definite portions of the "permanent surplus fund" had been invested in fixed or capital assets, there is no basis for plaintiff's assumption that none of the accumulated surplus was reflected in the cash or other liquid assets.

We are of the opinion that the resolution did not have the effect of converting the "permanent surplus" into corporate capital, but merely set it aside for use in the conduct of the business. Undoubtedly the general rule is that undistributed surplus, which has been retained for use in the corporate business, and which has been invested in physical assets, can be withdrawn and distributed as dividends. This rule was followed by the Supreme Court of Delaware in the case of Bryan v. Aiken, 1913, 10 Del.Ch. 446, 86 A. 674, 45 L.R.A.,N.S., 477, the reason and holding of which not only are pertinent to our question, but also constitute authority, since plaintiff is a Delaware corporation and the validity of its dividends must be determined by the law of its domicile.

In Bryan v. Aiken, supra, a dividend partly in cash and partly in stock was declared out of accumulated surplus which had been invested for a period of twelve years in "property or corpus" of the corporation in the form of permanent physical assets for use in the business of the corporation. The specific question decided was that a stock dividend declared out of such surplus belonged to a tenant for life; but the reasoning is applicable to our question. The Delaware Court's basic assumption is that undistributed surplus does not lose its character of corporate income, or earnings, merely by reason of its having been converted into corporate "property or corpus" in the form of physical assets which are permanently devoted to the business operations of the corporation.[2] And in the opinion of the Delaware Court a

---

[2] "It may be regarded as settled law, we think, that although a corporation has the right to set apart or reserve a portion of its net earnings for a period of years, and treat them as capital, retaining them in its treasury, or expending them in the purchase of securities or real estate for the company, yet if it sub-

dividend "in cash, in stock, or in both, based upon such earnings" is a "distribution of profits", a "turning back to the stockholders" of "net earnings which had been temporarily used for improvements." [pages 679, 684].

Plaintiff cites Bryan v. Aiken, supra, as authority for the proposition that a "company had the right to withhold the earnings, and to permanently capitalize them if it deemed it necessary or proper in the conduct of its business to do so." But, as stated above, the Delaware Supreme Court held that investing surplus funds in permanent physical assets and treating them, for all practical purposes, as capital assets during a period of twelve years did not capitalize them nor destroy their availability for dividends as undivided profits.

In our opinion, under the authority of Bryan v. Aiken, supra, the "permanent surplus fund" of the instant case, whether invested in permanent physical assets of the corporation or retained in the form of cash or securities, continued to be undivided profits and available as the basis of dividends. We conclude that the trial court erred in stating its conclusion of law that the declaration of the dividend was "ultra vires of the corporation and unlawfully charged to the surplus account contrary to the previous resolution of the Board of Directors."

It follows that the defendant Hogland was entitled to credit for the amount of the dividend as of the date it was credited to his account.

Appellants urge that the trial court erred in overruling their motion to dismiss the Bill of Complaint for the reason that the attorneys purporting to represent the company had no authority to represent it. Prior to the filing of this suit National Lock Company filed its petition for corporate reorganization in the District Court of the United States. This petition was filed on the 18th day of June, 1934, and proceedings to reorganize the corporation continued from that date until the 12th day of July, 1935, when the District Court made its final order. Prior to the date of the final order the District Court entered an order on the 26th day of February, 1935, which authorized the attorneys, who appear in this case for the plaintiff, to prosecute this suit in the name of National Lock Company against the defendants. It is the contention of defendants that "the order of the bankruptcy court authorizing this suit lost its validity upon the entry of the final decree in the bankruptcy proceedings and the closing of the estate, and that at that time the court lost jurisdiction of the debtor and had no further supervision of its affairs."

It is in general the position of plaintiff that the final decree in the reorganization proceeding did not have the legal effect of voiding the order of February 26, 1935, for two reasons: (1) Because the debtor agreed it should not have that effect, and (2) because the power of the court over its order subsists and continues in full force and effect until it is satisfied. Plaintiff further urges that the order authorizing the suits by independent counsel with the consent of the debtor, plaintiff, to the entry thereof, constitutes a contract by the debtor, the court, and intervening stockholders; and further that the debtor's subsequent representation to the court, in its petition presenting the modified plan of reorganization, that the order was to subsist notwithstanding the entry of the final decree, cannot be repudiated with the sanction of a court of equity.

The following facts are material to the decision of this question. During the pendency of the reorganization proceedings certain stockholders petitioned for leave to intervene and alleged on information that defendant Hogland had created a trust and had pledged to such trust as security for personal debts all of his stock in the corporation; that large sums were being taken from the corporation for the personal use of Hogland, and that it was essential to a proper reorganization of the affairs of the debtor that all causes of action which it might have against Hogland be saved and reserved to it, and excepted from the final adjudication or release by reason of confirmation of any plan of reorganization of the debtor; because a final

---

sequently divides such net earnings among the stockholders by declaring a dividend in cash, in stock, or in both, based upon such earnings, it is a distribution of profits. * * * In such case the accumulated income, as well as the securities and real estate purchased, are all assets of the corporation, but the earnings are not regarded as capital although they may have been treated by the corporation as such prior to the distribution."

decree confirming the plan would terminate all rights of the stockholder except as provided in the plan or otherwise reserved. The intervenors in their petition further allege that they had no assurance that such cause of action would be well, faithfully and effectively carried to prosecution; and that Hogland was seeking to use the reorganization proceeding as a means to prevent a proper examination of his misconduct.

The leave to the petitioners to intervene was granted and the intervening stockholders then presented their proposed plan of reorganization which included a provision "that the proponents of this plan shall be empowered * * * to institute and prosecute in the name of the debtor all * * * actions * * * (for the recovery) * * * of money owing from the officers of the debtor holding office subsequent to January 1, 1929 * * *." Thereafter the request of the intervenors for such authorization came on for hearing and an order granting such authority was entered February 26, 1935. The order expressly authorized the attorneys appearing in this cause to bring and prosecute to conclusion in the corporation's name any action in any court directed to recovery of liability of officers of the corporation. The order expressly prohibited the named attorneys from compromising any actions without the approval of the court where such suits should be pending; and required the attorneys to take no action pursuant to the terms of the order which should impede the adoption of the plan of reorganization.

The trial court found, and the record supports the finding, that counsel who were representing the National Lock Company in the reorganization proceeding consented to the order of February 26, 1935.

Later a paper was filed which was styled, "Modified Petition and Plan of Reorganization." It was filed by the corporation and intervenors and represented a request of both for one and the same action by the court. Among the recitals contained in the modified petition and plan is the following:

"6. This plan of reorganization makes no provisions for the institution of suits against officers, directors and others, and the final decree of this court shall in no wise estop or prejudice the Debtor from bringing and prosecuting the suit or suits against officers, directors and others authorized in the order of this Court, dated February 26, 1935."

Immediately following the foregoing is paragraph 7, which includes the plan of reorganization. The modified petition and plan of reorganization was signed by the same attorneys of the National Lock Company who had consented to the order of February 26, 1935.

The modified plan was confirmed by order of the District Court in the usual form and declared in all respects fully executed, carried out and accomplished; and the case was declared "hereby closed".

On November 1, 1935, the four named attorneys commenced the instant suit. Thereupon a meeting of the Board of Directors of plaintiff was held and a resolution was adopted declaring that the four named attorneys were unauthorized to bring the suit. Thereafter the defendants moved to dismiss the action on the ground that it was unauthorized, and Roy F. Hall, a director, claiming to appear on behalf of plaintiff corporation, moved to dismiss for the same reason. Both motions were overruled and the motion of Roy F. Hall was stricken from the files.[3]

The cause below proceeded to final decree and the District Court held that the order of February 26, 1935, which was consented to by plaintiff, authorized this suit and that "in the modified plan and final decree in said reorganization proceedings it was specifically provided that the order of February 26, 1935, should subsist and remain effective."

The order of February 26, 1935, clearly empowered the four named attorneys to prosecute the instant suit and defendants do not question that it was in full force and effect up to the date of the decree which confirmed the plan of reorganization. It evidently was the intention of the District Court to separate the settlement of the claims against the officers from the reorganization plan proper in order to facilitate the formulation and adoption of

---

[3] Roy F. Hall then filed an independent action allegedly on behalf of plaintiff herein seeking to enjoin the four named attorneys. Injunction was denied and an appeal was taken to this court. National Lock Co. v. Thompson, 7 Cir., 86 F.2d 484. The judgment of the lower court was affirmed and petition for writ of certiorari was denied by the Supreme Court of the United States. 300 U.S. 665, 57 S.Ct. 508, 81 L.Ed. 873.

a plan of reorganization for the National Lock Company. This is indicated by the terms of the order which directed the named attorneys not to take any action pursuant to the terms of the order which would impede pending negotiations for the adoption of a plan of reorganization agreeable to all parties. Also it was obviously the intention of the court to hold in abeyance any action under the authority conferred upon the attorneys until the reorganization plan should be adopted. This is inconsistent with an intention on the part of the court that the authority of the attorneys should cease with the adoption and confirmation of a plan of reorganization.

Paragraph 6 of the "modified petition and plan of reorganization", which was filed by the intervenors and the corporation, indicates an understanding that the authorization under the order of February 26, 1935, would continue in full force and effect after the plan of reorganization should become effective. The first six paragraphs of the "modified petition and plan" contain representations which are material to the terms of the plan which are set out in paragraph 7. They represent that certain facts exist and that certain acts will be done which constitute an inducement for the acceptance of the proposed plan. Paragraph 6 recites that "this plan * * * makes no provision for suits against officers * * *." Since the order of February 26, 1935, had already provided for such suits it was unnecessary to repeat it in the plan if the order was to continue in force; and paragraph 6 further recites that "the final decree of this court shall in no wise estop or prejudice the debtor from bringing * * * the suits * * * authorized in the order of February 26, 1935".

Since the vital feature of the authorization under the order of February 26, 1935, from the standpoint of the debtor corporation, was that it authorized suit by counsel who were independent of control by the officers of the corporation, it would be inconsistent with the foregoing recital of paragraph 6 to construe it to mean merely that after reorganization the corporation would be free to sue officers if the officers should direct the corporation to bring suit against themselves. Furthermore, the recital would have been an idle gesture if it was intended only to authorize suit by the corporation by counsel chosen by the Board of Directors, since such action would require no order of court.

We are of the opinion that the meaning of paragraph 6 is that the final decree is not to qualify the order of February 26, 1935.

Paragraph 5 of the final decree of the District Court in the reorganization proceeding is a blanket injunction against "all creditors of, claimants against, and stockholders of, the debtor", and restrains them from pressing any suits or proceedings at law or in equity against National Lock Company "or any of the assets or property of the debtor, directly or indirectly, on account of or based upon any right, claim or interest of any kind or nature whatsoever which any such creditor, claimant, or stockholder may have had in, or against said National Lock Company, debtor, or any of its property." But the blanket restraint is qualified by the clause "except as provided in said modified plan and in said order of February 26, 1935."

It is conceded that the present suit is one which was included in the order of February 26, 1935; and it is clear that the trial court believed that the foregoing blanket restraint covered the suits provided for in the order of February 26, 1935. Otherwise the trial judge, who had made the order of February 26, 1935, would not have expressly excepted it from the operation of the blanket restraint of Paragraph 5 of the final decree in the reorganization proceeding. We believe the language of the decree of injunction is broad enough in its necessary implications to include the instant suit. At any rate it is clear that the trial judge intended to exclude from the operation of the injunction all suits authorized by the order of February 26, 1935; and even if the instant suit is not within the scope of the restraint of Paragraph 5 of the final decree, it is obvious that the district judge intended by the saving exception to continue the order of February 26, 1935, in full force and effect. We must assume that the district judge in making his final decree in which he excepted from the restraining order the "said order of February 26, 1935" recognized and intended to give effect to the representation of paragraph 6 of the modified petition and plan of reorganization, which recited that the "final decree of this court shall in no wise estop or prejudice the Debtor from bringing and

prosecuting the suit or suits against officers, directors, and others authorized in the order of this court, dated February 26, 1935."

Since it is clear that the District Court intended, and clearly expressed the intention, to continue the order of February 26, 1935, in full force and effect, the only question remaining is whether or not the District Court had the power to do this as a part of the remedial action in the reorganization proceeding. We believe that the court had this power under the broad powers conferred in (h) of Section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207(h), Clarke et al. v. Utilities Power & Light Corp., 7 Cir., 90 F. 2d 798, 800.

The effect of holding that the order of February 26, 1935, continued in force after the final decree in the bankruptcy proceedings is not to add to, or modify, the plan of reorganization; nor is the effect of it to continue the jurisdiction of the District Court as a bankruptcy court over the instant suit. The order authorized the named attorneys to "institute and prosecute to conclusion, in the name of the debtor, any or all actions at law or in equity *in whatsoever courts of proper jurisdiction* directed toward the recovery for and on behalf of the debtor." (Our italics.) It was contemplated and understood by both the court and interested parties that the purpose of the authorization of the suit in question was to restore assets to the corporation for the benefit of the corporation, stockholders, and creditors. When the order was entered on February 26, 1935, with the consent of the corporation through its attorneys, it was understood, by the very terms of the order itself, that the named attorneys were restricted from taking any action under the terms of the order which should "in any way impede or hinder pending negotiations for the adoption of a plan of reorganization herein agreeable to all parties hereto." Such understanding necessarily involved an intention to expedite the removal of the business operations of National Lock Company from court control, for the benefit of the corporation itself, without awaiting either the institution or termination of suits under the order of February 26, 1935. The recital in the modified petition and plan of reorganization that the entry of a final decree was not to affect the authority to proceed un-

der the order of February 26, 1935, indicates that the aforesaid understanding and intention were common to the interested parties.

In our opinion a District Court sitting in bankruptcy in a reorganization proceeding has the power to authorize, in its discretion, the bringing of suits to recover assets alleged to have been appropriated unlawfully by officers of the corporation and to continue this authority beyond the time of the final decree in the reorganization proceeding, when it appears that the best interests of the corporation, stockholders and creditors can be served by closing up the reorganization proceeding and restoring the control of the business operations of the debtor to the corporation prior to the termination, or even the institution, of authorized suits. The fact that the bankruptcy court may lose jurisdiction generally over the debtor corporation, and over the cause presented by the petition for formal reorganization of the debtor, does not deprive it of continued jurisdiction over its order authorizing the bringing of the suits, when it is clear from the record that the court reserved continuing jurisdiction for the purpose of enabling the suits to be prosecuted to termination subsequently to the entering of the final decree in the reorganization proceeding. An entirely different question would be presented if an order authorizing suits to recover assets had been made by the court after the final decree had been entered in the reorganization proceedings.

Since a vital part of the order of February 26, 1935, was the authority of the named attorneys to prosecute suits independently of control by the governing boards of the debtor corporation, we conclude that their authority was not terminated by the final decree in the reorganization proceeding.

Defendants urge that the trial court erred in allowing what defendants designated as "double recovery against Frank G. Hogland and the inconsistent theories of 'debt obligation' and 'constructive trust'." The foregoing contention is based on the assumption that defendant Hogland is held accountable for a particular advancement in the amount of $200,000 on the "debtor and creditor" theory; and defendants contend that this liability having been adjudicated on that theory the court erroneously entered a further de-

cree against "appellants Hogland and Anderson, successor-trustee, based upon this same transaction, this portion of the decree of the Court being based upon the 'constructive trust' doctrine."

The substance of the wrongful conduct which is charged in the complaint is that funds of the plaintiff corporation were withdrawn by defendant Frank G. Hogland with the cooperation of other defendants "wilfully, maliciously, and fraudulently, and in violation of law, and Section 36 of Chapter 65 of the General Corporation Law of the State of Delaware." Also it is charged that the $200,000, here material, was used in the purchase and retirement of certain note obligations of the trust that was created by Hogland, and that thereby certain shares of capital stock of National Lock Company were redeemed. The evidence supports the conclusion that funds unlawfully withdrawn were used for the benefit of the trust and for the redemption of certain shares of stock. The trial court held Hogland accountable for the $200,000 withdrawal, together with accumulated interest, and provided in its decree that the shares of stock acquired by Hogland with such funds should be delivered to the Clerk of the Court. But the decree provides that the payment of the sum chargeable to Hogland upon his unlawful withdrawal will release the stock; and further provides that in the event of failure to reimburse the appellee for the unlawful withdrawals the court will determine the fair and reasonable value of the stock in question and apply this sum as a credit to the liability chargeable to Hogland and others by reason of the participation in the unlawful withdrawals. The stock is impressed with a lien to the extent that unlawfully withdrawn funds of appellee were used for its redemption. The impressing of a lien upon the stock is the utilization of a remedy in the nature of a constructive trust. But it does not result in double recovery or a violation of the doctrine of "election." It has been said by the United States Supreme Court in Friederichsen v. Renard, 247 U.S. 207, 38 S.Ct. 450, 62 L.Ed. 1075, that "At best this doctrine of election of remedies is a harsh, and now largely obsolete rule, the scope of which should not be extended. * * *" [page 452.]

 The formal doctrine of election of remedies by judicial decisions has been confined gradually to its true remedial purpose as a doctrine of substance; and as stated by an eminent authority on trusts and trustees, should be confined to cases "where (1) double compensation of the plaintiff is threatened or (2) the defendant has actually been misled by the plaintiff's conduct or (3) res adjudicata can be applied." Bogert, Trusts and Trustees, 1935 Vol. IV, § 946.

In the instant case the impressing of the lien upon the redeemed stock was not an inconsistent remedy, and under the decree of the court could not result in double recovery for the plaintiff.

 We find no error in that part of the decree which held that "Frank G. Hogland and Gust Anderson, Successor Trustee of the Hogland Trust", were holding as constructive trustees for the complainant the shares of stock which were redeemed as a result of the payment of notes of the Hogland trust out of the unlawfully appropriated funds of appellee.

 The Special Master computed interest upon the principal amount found due at the rate of six per cent per annum from the date of the advancements to Hogland. The trial court adopted the computation of the Master. The defendants contend that the Illinois statute should control allowance of interest and that the applicable section imposes a rate of five per cent per annum, and only from the date on which the balance was determined to be due.[4] It is conceded in the instant case that the Delaware law governs the substantive right asserted in this action. The unlawful withdrawals of funds were made in Illinois, but we must look to the law of Delaware to determine the legal consequences of the violation of the plaintiff's substantive right by such unlawful withdrawals. The substantive law which controls makes interest a part of the obligation flowing from the illegal withdrawals of funds. Interest is a part of plaintiff's substantive right and is not merely an item of damages to be awarded by a court at its discretion upon an obligation not stipulating "for interest". Consequently, as stated above, it must be governed by the law which concededly in this cause governs the plaintiff's substantive right. The general corporation law of Delaware prohibits the loan of money by a corporation to any officer of the corporation; and further provides that the violation of this duty shall

---

[4] Section 2, c. 74, Illinois Revised Statutes of 1937.

create a right of recovery "of the sum so loaned with interest." The Delaware corporation act does not specify the rate of interest, but in accordance with sound principles of statutory interpretation, we must assume a legislative intent that the applicable rate of interest under the Delaware law should be the measure of the amount of interest recoverable. As stated above, the defendants' objection to the holding of the trial court in respect to interest is that the court erred in not applying the Illinois statute under which the allowable rate is five per cent. There is no contention that the court below did not award the proper rate of interest which the applicable law of Delaware authorizes. We must assume that the District Court correctly applied the law of Delaware in respect to the rate of interest in the absence of any showing to the contrary.

Our conclusion is that the trial court erred only in stating its conclusion of law respecting the validity of the declaration of the dividend; and in that respect the judgment is reversed with directions to the trial court to restate its conclusion of law in harmony with this opinion and for proper adjustment in the amount of recovery. In all other respects the judgment of the District Court is affirmed.

### On Petition for Rehearing.

After a careful examination of the merits of the petition for a rehearing we find no justification for granting the same. We appreciate the force of defendants' contention that the final decree entered in the reorganization proceeding destroys the jurisdiction of the court over its order authorizing the prosecution of the instant suit; but we see no reason to change our conclusion that the bankruptcy court had the power to reserve, and that it did reserve, continuing jurisdiction for the purpose of controlling and making effective its order authorizing the prosecution to termination of the instant suit.

Both parties suggest the advisability of a modification of our decree. We cannot modify the decree in the manner suggested, but feel that the mandatory language of the decree should be made more specific. For that purpose the language of the last paragraph of the opinion of this court in this cause is modified to read as follows:

Our conclusion is that the trial court erred only in stating as its conclusion of

law that the dividend was ultra vires of the corporation and unlawfully charged to the surplus account of the corporation. To the extent that the decree rests upon that conclusion it is reversed and the cause remanded with directions to the trial court to modify conclusion of law No. 4 in its Findings of Fact and Conclusions of Law to conform to the holding of this Court respecting the validity of the declaration of the dividend of December 30, 1930; and the District Court is directed further to make such proper adjustments in the amounts of recovery against the defendants as are made necessary by our holding that the defendant Hogland was entitled to credit for the amount of the dividend as of the date it was credited to his account with plaintiff corporation. In all other respects the decree of the District Court is affirmed.

The language of the decree heretofore entered is modified accordingly.

Petition for rehearing is denied.