## ORTH v. TRANSIT INV. CORPORATION et al.

### No. 8084.

Circuit Court of Appeals, Third Circuit.

Argued Sept. 9, 1942.

Decided Dec. 29, 1942.

George Henry Huft, of Philadelphia, Pa. (Keough, Huft, Bohan & Kitchen, of Philadelphia, Pa., on the brief), for appellants.

Joseph P. Gaffney, of Philadelphia, Pa. (Thomas C. Egan, and James J. McGinnis, both of Philadelphia, Pa., on the brief), for appellees.

David L. German ·and Joseph Ominsky, both of Philadelphia, Pa., for intervenor Ralph W. Jones, and amici curiæ.

Before BIGGS, MARIS and JONES, Circuit Judges.

BIGGS, Circuit Judge.

### Facts

On March 7, 1940, the plaintiff, a preferred stockholder of Transit Investment Corporation, a Pennsylvania corporation, filed suit on behalf of himself and the other stockholders of Transit Investment Corporation against that company, against Pennsylvania Acceptance Corporation, a Delaware corporation, and against certain individuals who were or are officers and directors of Transit Investment Corporation. An amended complaint was filed and to this the defendants filed an answer.

The amended complaint alleges that the officers and directors of Transit Investment Corporation " * * * contrary to the express purpose of its organization * * * viz.: investing in securities of Philadelphia Rapid Transit Company, Mitten Bank and other properties under the supervision of Mitten Management Inc.", and in violation of their fiduciary duties caused the wrongful use and misappropriation of corporate funds in excess of one million dollars. The answer sets forth the purpose of the corporation as described in its certificate of incorporation which is that of "transacting the business of investing", without reference to investing in securities of Philadelphia Rapid Transit Company

or other properties under the supervision of Mitten Management, Inc. It is obvious in view of this and allegations in the amended complaint as to investments made by Transit Investment Corporation that in fact there has been no failure of corporate purpose.[1]

There are allegations that on a balance sheet as of December 31, 1939 (the end of the fiscal year preceding the filing of the complaint) Transit Investment Corporation showed total assets of a value in excess of $38,000,000, but that "Said assets did not then or ever since have a fair value exceeding 25 percent of the value asserted." It is not alleged that Transit Investment Corporation is insolvent in that its liabilities exceed its assets or in that it is unable to meet its debts as they mature in the ordinary course of business; nor is it asserted that the corporation is in a precarious financial position insofar as creditors are concerned. There is no doubt that Transit Investment Corporation is solvent.

Acts of alleged misconduct by officers and directors of Transit Investment Corporation are particularized as follows: First, it is stated that the officers and directors caused the corporation to make improper and speculative investments in stocks and bonds in substantial amounts; second, that they made "alleged" advances in excess of $1,200,000 to "affiliated" companies; third, that they caused the corporation improvidently to buy the Mitten Building and other parcels of real estate in Philadelphia at exorbitant prices; and, fourth, that these purchases were made at a time when T. E. Mitten and his associates were directors of both grantor and grantee corporations.

It is alleged that since 1931 the officers and directors of Transit Investment Corporation have caused that corporation to hold and operate the Mitten Building at substantial losses and that the deficit so caused now exceeds $650,000. The amended complaint further alleges that the officers and directors of Transit Investment Corporation caused that corporation without substantial or adequate consideration to guarantee the payment of principal and interest of bonds secured by a first mortgage on the Mitten Building despite the fact that there was no equity in the property over the amount of bonds outstanding.

It is alleged also that Transit Investment Corporation in July, 1939, proposed to the holders of the bonds maturing in March, 1940, to enter into an agreement with two guarantor corporations for the extension of the maturity of the bonds until March 15, 1950, for the reduction of the interest rate, and for the elimination of amortization payments until March 15, 1940; and that Transit Investment Corporation agreed also to retire and cancel $551,000 par value of those bonds as a condition precedent to the consummation of the contract. This agreement of adjustment, the amended complaint alleges, was beyond the power of Transit Investment Corporation. It further states that $551,000 face value of the bonds were actually retired and cancelled between the time of the filing of the original complaint and the time of filing the amended complaint.

The amended complaint further alleges that since 1931, Transit Investment Corporation by reason of the gross mismanagement of its affairs by its officers and directors, has shown no profits and paid no dividends and that the continuation of excessive and exorbitant payments for salaries and expenses will dissipate the assets of the corporation to the irreparable injury of the stockholders.

The amended complaint prays for an accounting by the officers of Transit Investment Corporation, for an order requiring certain of them to pay back to Transit Investment Corporation such sums as may be found to be due from them, for an injunction to prevent the corporate defendants from making any sale or other disposition of their property, and, finally, for a receiver for the corporate defendants, " * * * with the usual powers of a Receiver in Equity to take possession of all their properties and effects and hold the same subject to Order of Court for liquidation and distribution to such creditors and stockholders as may be entitled thereto. * * *"

The answer denies all allegations of fraud and mismanagement and asserts that the investments made by Transit Invest-

---

[1] The provision of the certificate of incorporation is as follows: "2nd. Said corporation is formed for the purpose of transacting the business of investing on behalf of itself or others, any part of its capital and such additional funds as it may obtain, or any interest therein, either as tenant in common or otherwise, and selling or otherwise disposing of the same, or any part thereof, or interest therein."

ment Corporation were sound and provident.

On the day that the original complaint was filed the plaintiff moved for a preliminary injunction and for the appointment of a temporary receiver. No hearing was had on the motion, but the court entered an order in the cause which recited that exceptional circumstances had arisen and appointed a member of the bar as an "examiner" to examine the books of Transit Investment Corporation. After the examiner reported that he had been refused access to the records of the corporation, the matter was set down for hearing. Testimony was taken on the issues presented by the amended complaint and the answer. On April 24, 1940, at the conclusion of taking of testimony, counsel for the parties asked the court for an opportunity to confer. The court then granted a thirty day continuance for the purpose of working out a plan which would enable the corporation to be "truly representative and responsible to its own stockholders".

In the interval the examiner, who had been granted access to the books of Transit Investment Corporation, submitted a report in which he stated as his conclusion that the officers of Transit Investment Corporation had conducted its affairs in such a way that there was danger that all of its assets would be dissipated and the men who managed the corporation in the past could not be trusted to represent the shareholders fairly in the future. The court characterized some portions of the report as "shocking". It was not filed as a record in the case, however, until August 27, 1942, when an appeal was taken to this court.[2]

The report discloses that a meeting was held in the office of the leading counsel for Transit Investment Corporation who served as chairman of the meeting. The examiner acted as secretary. The examiner's report states, "At this meeting, three possible courses were suggested: 1. Change of capital structure and general house-cleaning [of Transit Investment Corporation] without liquidation; 2. Change of capital structure and general house-cleaning with partial liquidation; 3. Complete liquidation and distribution of assets."

An agreement was reached and we think that what we have just quoted from the examiner's report throws light on what was done subsequently by the parties and the court. On May 28, 1940, the parties again appeared before the court. Counsel for Orth submitted to the court a proposed decree for the appointment of receivers for both corporate defendants. Counsel for Transit Investment Corporation, as we will demonstrate hereafter, consented to the entry of this decree, but stated, " * * * we wish it to be definitely understood that there are no admissions involved in our consent. * * * " The court expressed its approval of the course that counsel were pursuing and signed the decree approved by counsel for the respective parties.[3] On the same day Pennsyl-

---

[2] The practice disclosed is subject to serious question when employed prior to adjudication. The "examiner" did not in fact serve as an examiner and hold hearings at which the parties were present or were represented by counsel. In fact he served as a private source of information to the court and demanded the right to examine the books of Transit Investment Corporation in order that he might report to the court. The correct way for a court to acquire information in respect to a pending receivership action, prior to an adjudication, is to receive evidence or admissions from the parties in open court. Any report made to the court, following adjudication, should be filed promptly so that it may become a matter of record. We are not here concerned with the power of a court to acquire information concerning the res subject to its jurisdiction after adjudication. See In re Utilities Power & Light Co., 7 Cir., 90 F.2d 798.

[3] The decree, insofar as it is material, is as follows: "And Now, to-wit: this 28th day of May, 1940, this cause having come on for hearing upon complaint, answer and proof; and all parties being duly represented by counsel; and it appearing to the Court that the appointment of Trustees to conserve the defendant's estate is in the interest of all concerned and the consent of all parties to such an appointment having been indicated, it is (upon motion of James J. McGinnis, Esq., attorney for plaintiff) Ordered, Adjudged and Decreed that Bernard J. Kelley, Francis E. Walter and James J. Connolly be and they are hereby appointed Trustees of the Estate of the defendants, Transit Investment Corporation and Pennsylvania Acceptance Corporation, with all the powers and duties usually vested in Receivers but with a view to reorganization and rehabilitation rather than liquidation. This Decree to be followed by another Order more specifically prescribing said powers and duties, directing reports to the Court,

vania Acceptance Corporation appeared by its counsel and consented to the entry of the decree appointing receivers for it also.

On June 20, 1940, a supplemental order in respect to the powers of the receivers was entered by the court. Its second paragraph provides that the receivers, " * * * so named and described for reorganization purposes" are to be vested with the powers and subject to the duties of receivers in equity and are authorized to take charge of the affairs of the corporations and to administer them.

An order was entered postponing the annual meeting of the stockholders of Transit Investment Corporation. No meeting of stockholders has been held since the receivers were appointed.

On September 24, 1941, a group of forty-eight stockholders of Transit Investment Corporation, the present appellants, asked leave to intervene in the proceedings and petitioned the court to dismiss the receivers. The motion stated that the representation of the interests of the petitioners in the proceedings was inadequate. The accompanying petition alleged that more than a year had gone by since the appointment of receivers and that no steps had been taken to effect a reorganization of Transit Investment Corporation and Pennsylvania Acceptance Corporation; that the affairs of Transit Investment Corporation were being conducted by the receivers without regard to the interests of stockholders and for the benefit of themselves and their counsel; that one of the receivers had interests which conflicted with those of the estate; that the receivers were disbursing funds of Transit Investment Corporation and disposing of its property without sanction of law; that unnecessary and excessive payments of fees had been made to the examiner and to the receivers and their counsel; that the shares of the stock of a subsidiary corporation, Diamond Silver Corporation, had been disposed of, with claims of Transit Investment Corporation and of Pennsylvania Acceptance Corporation against Diamond Silver Corporation, for an inadequate consideration; and, finally, that there was no legal or valid reason for the continuance of the receivership.

The petition prayed the district court to wind up the receivership and to turn the affairs of Transit Investment Corporation over to a new board of directors to be elected by the stockholders under the supervision of the court from among disinterested and competent candidates.

The receivers filed answers to the motion and the petition. Both came on for hearing on November 3, 1941. The court took the matters under advisement.

On March 4, 1942, the court below without notice (insofar as this record shows) to the appellants, granted the prayers of a petition filed by the receivers asking leave to sell certain securities owned by Transit Investment Corporation including $1,899,300 face amount of International Railway Company Refunding and Improvement Bonds which had netted Transit Investment Corporation an annual income of approximately $57,000. The bonds were sold by the receivers. Stocks of the International Railway Company belonging to Transit Investment Corporation were also sold by the receivers with leave of court. Other assets of Transit Investment Corporation have been sold by the receivers or their sale has been arranged for.

On May 4, 1942, an order was entered by the court below, following an opinion filed April 23, 1942, granting the motion of the appellants for leave to intervene, but denying their petition to wind up the receivership of Transit Investment Corporation and to discharge the receivers. On June 1, 1942, an appeal was taken from this order.

On July 11, 1942, the appellants filed with this court a petition for an order to preserve the defendant corporation in statu quo pending the disposition of the appeal. Thereafter the receivers filed a motion to dismiss the appeal on the ground that the order of the District Court denying the appellants' petition to discharge the receivers was interlocutory. On July 23, 1942, this court denied the motion to dismiss the appeal and made an order which in effect preserved assets of the corporation in statu quo until the disposition of the appeal.

---

and enjoining the defendants its officers and agents from acting otherwise than in accordance with this decree."

The word "trustees" was used by the court in lieu of the word "receivers" be-

cause Transit Investment Corporation owned a controlling interest in the Mitten Bank which it was felt might otherwise be affected by unfavorable publicity.

### Law
#### Jurisdiction

 The order appealed from is an interlocutory order but is none the less appealable. Since the interveners prayed specifically for the winding up of the receivership, the order denying their prayer is one which is included within the exceptions of Section 129 [4] of the Judicial Code, 28 U.S.C.A. § 227. Since the appeal is properly before us we have the duty to determine the jurisdiction of the court below over the parties and the subject matter of the litigation. Mitchell v. Maurer, 293 U.S. 237, 55 S.Ct. 162, 78 L.Ed. 338. We also must determine whether the power of the court below was invoked for a purpose for which, under the allegations of the amended complaint, it might not be exercised. Scattergood v. American Pipe & Construction Co., 3 Cir., 249 F. 23, 25. The equity of the complaint, the relief granted and all other issues are before us in the appeal. Smith v. Vulcan Iron Works, 165 U.S. 518, 17 S.Ct. 407, 41 L.Ed. 810; Cabaniss v. Reco Min. Co., 5 Cir., 116 F. 318, 320; Arkansas Southeastern R. Co. v. Union Sawmill Co., 5 Cir., 154 F. 304, 311; Guardian Trust Co. v. Kansas City Southern Ry. Co., 8 Cir., 171 F. 43, 51, 28 L.R.A.,N.S., 620; Shubert v. Woodward, 8 Cir., 167 F. 47, 61, and Jones v. Haller, 2 Cir., 123 F.2d 845, citing Holmberg v. Carr, 2 Cir., 86 F.2d 727. But see Grand Beach Co. v. Gardner, 6 Cir., 34 F.2d 836; Miller v. Pyrites Co., 4 Cir., 71 F.2d 804; and Martin v. Partridge, 8 Cir., 64 F.2d 591, 592.

 The court below unquestionably had jurisdiction of the parties and of the subject matter of the suit. The question for our consideration is whether under the allegations of the amended complaint, the court's power was invoked for a purpose for which it might not be exercised. We think for a number of reasons that the equity power of the court was erroneously invoked.

#### The Relief Granted was Not Within the Case Made by the Pleadings.

We need not discuss further those parts of the amended complaint which allege the failure of corporate purpose of Transit Investment Corporation. As to the allegations of the failure of Transit Investment Corporation to pay dividends, admitting them to be true, they will not serve as the basis for the appointment of a receiver under the circumstances of the case at bar. The other averments of the amended complaint state in substance that the assets of Transit Investment Corporation have been misappropriated or misapplied by its officers and directors and that this will continue unless steps be taken to prevent it. For these reasons the plaintiff states that he desires an accounting from the individual defendants, the appointment of a receiver for liquidation of the company, and other relief.

 The allegations of a bill rather than its prayers must furnish the basis for the relief to be granted by a court of equity. National Ben. Life Ins. Co. v. Shaw-Walker Co., 71 App.D.C. 276, 111 F.2d 497, 504; Davidson v. Bankers Bond & Mortgage Guaranty Co., D.C., 38 F.Supp. 825.

 It will thus be seen that nothing in the amended complaint justified the appointment of receivers for the reorganization of Transit Investment Corporation. The fact that the decree was entered by consent did not cure this basic deficiency. Whelpley v. Erie Ry. Co., C.C.1868, 6 Blatchf. 271, Fed.Cas.No.17,504.

#### A Federal Court of Equity May Not Appoint a Receiver for the Reorganization of a Solvent Corporation under the Circumstances of the Case at Bar.

 The right of a federal court to entertain a stockholders' bill against a corporation for the appointment of at least a temporary receiver in order to prevent threatened diversion or loss of assets by the fraud and mismanagement of its officers is well established. See Burnrite Coal Company v. Riggs, 274 U.S. 208, 212, 47 S.Ct. 578, 71 L.Ed. 1002, and the cases cited in the first footnote to Mr. Justice Brandeis' opinion in that case. The amended complaint in the instant case states causes of action which (allegations of failure of corporate purpose and failure to pay dividends aside) might be maintained by any stockholder in a secondary or derivative suit, causes of action which could be main-

---

[4] Section 129 of the Judicial Code provides that "Where, upon a hearing in a district court, * * * an interlocutory order or decree is made * * * refusing an order to wind up a pending receivership or to take the appropriate steps to accomplish the purposes thereof * * * an appeal may be taken from such interlocutory order or decree to the circuit court of appeals; * * *".

tained by the corporation itself in loco penitentiæ or by a receiver acting on its behalf. Dissipation of corporate assets may be prevented by injunction or by the appointment of a receiver. The appointment of a receiver may be of aid in obtaining an accounting. A receiver may preserve books and records against possible destruction. A receiver may take possession of corporate assets pending the election of a disinterested and competent board of directors. A receiver may be appointed for many other reasons within the equity powers of a federal court. But as was stated by the Supreme Court in Pusey & Jones Co. v. Hanssen, 261 U.S. 491, 497, 43 S.Ct. 454, 67 L.Ed. 763, a remedial right to proceed in a federal court of equity cannot be enlarged or limited by state statute.

The form of equitable relief to be given by a federal court also must be determined by federal law and not by state decisions. Maxwell v. Enterprise Wall Paper Mfg. Co., 3 Cir., 131 F.2d 400; Black & Yates, Inc. v. Mahogany Association, Inc., 3 Cir., 129 F.2d 227, certiorari denied 63 S.Ct. 76, 87 L.Ed. ——.

The appointment of a receiver is a remedy and not a right. It should be borne in mind, however, that the fact that a corporation is solvent will not prevent the appointment of a receiver for it by a federal court if that remedy be appropriate. Clark on Receivers, Second Edition, Volume 2, Section 748(k); (1926) 43 A.L.R. 242; (1929) 61 A.L.R. 1212; (1934) 91 A. L.R. 665. It is fundamental, however, barring the existence of a statute which authorizes a contrary course, that a federal court may appoint a receiver only as ancillary to or in aid of the main object of the suit, an end or object which must be within the jurisdiction of the court.

A federal court may appoint a receiver for a solvent corporation as ancillary to the kinds of relief described in the preceding paragraphs but in view of the undoubted solvency of Transit Investment Corporation, no federal statute such as Chapter X of the Bankruptcy Act as amended, 11 U.S.C.A. § 501 et seq., being applicable on either the facts or the pleading, the court was in error in appointing receivers to reorganize the corporation by the sale of its assets or by the rearrangement of its capital structure or in any other way.

### As to the Consent of Transit Investment Corporation.

The decree of May 28, 1940, appointing the receivers was in fact a consent decree. This is apparent both from the terms of the decree itself and from the conduct of the parties prior to and at the time of its entry.[5]

Nothing was gained by the purported consent of Transit Investment Corporation. We are not dealing here with a case where the allegations of a complaint show an equity for the appointment of a receiver for reorganization of a corporation and the defendant consented thereto by answer or otherwise. Here, as we have demonstrated, the amended complaint makes no case for the appointment of receivers for the reorganization of Transit Investment Corporation. A court's powers may not be enlarged by consent. Moreover, in the case at bar the purported consent was no consent at all for it was beyond the authority of the officers who gave it to bind the corporation in this manner.

Putting to one side for a moment any question which might arise as to the sufficiency of a consent to the appointment of receivers for reorganization given by the members of an executive committee (a majority of whom were defendants in the suit) drawn from the board of directors of a solvent Pennsylvania corporation, the consent was of no effect in view of a lack of confirmation by the stockholders of Transit Investment Corporation. Reorganization of a solvent Pennsylvania corporation either by the sale of its assets or the reclassification of its stock involves dealing with the internal affairs of the corporation and with the rights of stockholders inter sese and in relation to the corporation. There are existing Pennsylvania statutes which provide means of doing this. In every instance rearrangement of stockholders' rights is based upon the consent of the holders of the majority of the stock affected.

The government of a Pennsylvania business corporation in its ordinary business transactions is vested in its board of di-

---

[5] The decree was not made after adjudication of the issues raised by the pleadings. The court below made no findings of fact or conclusions of law as required by Rule 52 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following § 723c.

rectors. See the Act of May 5, 1933, P.L. 364, art. IV, § 401, and the Act of July 2, 1937, P.L. 2828, § 1, 15 P.S. § 2852—401. The election of a Pennsylvania business corporation to dissolve voluntarily is governed by the provisions of the Act of May 5, 1933, P.L. 364, art. XI, § 1102, 15 P.S. § 2852—1102, and requires " * * * the affirmative vote of the ·holders of at least a majority of outstanding shares * * * entitled to vote on the resolution [of'dissolution] * * *." The sale of all or substantially all of the assets of a Pennsylvania business corporation likewise requires the ratification of the resolution of the board of directors by a majority of the stockholders of the corporation. See the Act of May 5, 1933, P.L. 364, art. III, § 311, 15 P.S. § 2852—311.

In the case at bar the executive committee of Transit Investment Corporation seeks to accomplish by indirection and without the consent of stockholders, a corporate reorganization by the processes of the federal court. The members of the executive committee or board of directors of Transit Investment Corporation, a solvent Pennsylvania corporation, seek to substitute their consent to reorganization for that of the stockholders as required by the law of Pennsylvania. This they cannot do. The law of Pennsylvania provides methods of reducing stated capital, Act of May 5, 1933, P.L. 364, art. VII, § 706, 15 P.S. § 2852—706; means of redeeming and cancelling shares of stock, Act of May 5, 1933, P.L. 364, art. VII, § 705, 15 P.S. § 2852— 705; methods of dissolution, both voluntary and involuntary, Act of May 5, 1933, P.L. 364, art. XI, §§ 1104, 1105, and Act of May 5, 1933, P.L. 364, art. XI, §§ 1107, 1108, 15 P.S. § 2852—1104, 2852—1105 and § 2852— 1107, 2852—1108; and like° provisions which are common to the general corporation laws of most of the states. But the changes must be effected by a majority vote of all the classes of stock affected.

■ A consent might have been effective in a proceeding in which the relief sought and granted was based upon the allegations of the pleadings if Transit Investment Corporation had been insolvent or in financial difficulty, for the provisions of the Act of May 5, 1933, P.L. 364, art. III, § 319, 15 P.S. § 2852—319 would then have been applicable and would have authorized the board of directors "by resolution and without the consent of the shareholders" to file an answer in a proceeding consenting to the appointment of a receiver. This statute has not been construed by the Pennsylvania courts. While the term "in financial difficulty" is broad, we think it cannot be construed to apply to the circumstances of Transit Investment Corporation in the case at bar. The difficulties with which the corporation is confronted are primarily those which have arisen between the corporation and its stockholders by reason of alleged improper corporate management amounting to fraud. We use the word "alleged" advisedly because Transit Investment Corporation made no admissions even when it consented to the appointment of receivers. The allegations of its answer denying the statements of the amended complaint still stand.

### As to the Appointment of a Receiver for Pennsylvania Acceptance Corporation.

■ Counsel for Pennsylvania Acceptance Corporation filed a consent to the appointment of receivers for it. This corporation was not described in the amended complaint and no allegations justifying the appointment of receivers were made in respect to it. However, the defendant's answer to the amended complaint admits that Pennsylvania Acceptance Corporation is a wholly owned subsidiary of Transit Investment Corporation. Under the doctrine of Metropolitan Railway Receivership (Matter of Reisenberg), 208 U.S. 90, 111, 28 S.Ct. 219, 52 L.Ed. 403, if Pennsylvania Acceptance Corporation had not been named a party defendant it could have intervened and might have been made a party to the suit. A receiver could have been appointed for it since its affairs are bound up with those of Transit Investment Corporation. The fact that Pennsylvania Acceptance Corporation comes into the suit at bar because named as a defendant by the plaintiff instead of by way of its own intervention is of itself a matter of small importance. It is a totally owned subsidiary of Transit Investment Corporation and it might be a formal matter to have its stockholders consent to the appointment of a receiver for it. Such consent, however, would turn upon the consent of the stockholders of Transit Investment Corporation. The appointment of a receiver for Pennsylvania Acceptance Corporation under the circumstances of the case at bar must stand on the propriety of the appointment of receivers for Transit Investment Corporation. Since the appointment of receivers

for reorganization of that corporation was unjustified, as we have demonstrated, the appointment of receivers for the reorganization of Pennsylvania Acceptance Corporation must also fall.

### Conclusions

█ The receivers have in fact embarked upon a piecemeal liquidation of the assets of Transit Investment Corporation. This course was unjustified for the reasons heretofore stated.

Receivers might properly have been appointed for Transit Investment Corporation and Pennsylvania Acceptance Corporation as ancillary to relief supported by the pleadings, viz., the conservation of assets of the corporations pending the appointment of disinterested and competent boards of directors for the corporations, but the court below was in error in entering the decree of May 28, 1940, appointing receivers for the reorganization and rehabilitation of the corporate defendants. The supplemental decree of June 20, 1940, also was entered in error.

The receivers appointed for the reorganization and rehabilitation of the corporate defendants will be discharged and the receiverships terminated upon the completion of the course of procedure outlined in the following paragraph.

█ The court below shall permit the stockholders of the corporate defendants as promptly as possible to elect boards of directors from among competent and disinterested nominees and shall, if necessary, supervise these elections in order that competent and disinterested boards of directors may be obtained for the corporations. Following the election of a board of directors for Transit Investment Corporation the District Court will direct that all assets and property in the possession of the receivers be, with all convenient speed, surrendered to Transit Investment Corporation, subject to the payment of such reasonable fees as may be allowed to the receivers and their counsel, and of all obligations lawfully incurred by them. Any suit or suits brought by the receivers in behalf of Transit Investment Corporation shall be assigned and marked to the use of the corporation. The District Court will take like steps in respect to the assets and property of Pennsylvania Acceptance Corporation. Cf. Commonwealth of Pennsylvania v. Williams, 294 U.S. 176, 186, 55 S. Ct. 380, 79 L.Ed. 841, 96 A.L.R. 1166, and

Harkin v. Brundage, 276 U.S. 36, 57, 58, 48 S.Ct. 268, 72 L.Ed. 457.

That portion of the order of May 4, 1942, denying the prayers of the interveners for the winding up of the receivership is reversed and the cause is remanded with directions to take further steps not inconsistent with this opinion.