**SKIRVIN et al. v. MESTA et al.**
Nos. 2848, 2899.

Circuit Court of Appeals, Tenth Circuit.
March 9, 1944.

Harry O. Glasser, of Enid, Okl., and Fred P. Branson, of Muskogee, Okl., for appellants.

Lynn Adams and Coleman Hayes, both of Oklahoma City, Okl. (D. I. Johnston, Roy C. Lytle, Keaton, Wells & Johnston, Bohannon & Adams, and Ames, Monnet, Hayes & Brown, all of Oklahoma City, Okl., on the brief), for appellees.

Before PHILLIPS and BRATTON, Circuit Judges, and KENNEDY, District Judge.

BRATTON, Circuit Judge.

The Skirvin Hotel and the Skirvin Tower are on opposite sides of the street in Oklahoma City, are connected by underground passage, and have certain operating facili- ties in common; Texahoma Realty Company owns the Skirvin Hotel, and prior to the receivership hereinafter mentioned Skirvin Hotel, Inc. operated it; Broadway Development Company owns and prior to the receivership operated the Skirvin Tower; and American Oil & Refining Company owns stock in Broadway Development Company. The officers and directors of Texahoma Realty Company are W. B. Skirvin, president, O. W. Skirvin, vice-president, M. A. Luty, secretary-treasurer, and the three the directors; of Broadway Development Company, O. W. Skirvin, president, W. B. Skirvin, vice-president, W. D. Parsons, secretary-treasurer, and the three the directors; of Skirvin Hotel, Inc., W. B. Skirvin, president, O. W. Skirvin, vice-president, M. A. Luty, secretary-treasurer, and the three the directors; and of American Oil and Refining Company, W. B. Skirvin, president, O. W. Skirvin, vice-president, M. A. Luty, secretary-treasurer, and the three together with two others the directors. W. B. Skirvin is the father of Pearl R. Mesta, Marguerite Tyson, and O. W. Skirvin, and from the beginning he was the active manager of both hotels.

In March, 1938, Pearl R. Mesta instituted in the United States Court three separate actions of similar pattern. In the first, No. 2055, Broadway Development Company and W. B. Skirvin were the defendants. It was alleged in the complaint that the stock of the corporation was divided into 1,000 shares; that American Oil & Refining Company owned 786 shares, plaintiff 212 shares, and O. W. Skirvin and W. D. Parsons 1 share each; that W. B. Skirvin and M. A. Luty had without authority received, endorsed and cashed checks payable and belonging to plaintiff; that according to her information the funds had been deposited to the account of American Oil & Refining Company and used in connection with the construction and operation of the Skirvin Tower; that she did not know the exact amount of such funds but that they exceeded $300,000; that the Skirvin Tower was not completed; that Broadway Development Company was insolvent; and that its affairs were being mismanaged. She prayed for an accounting and the appointment of a receiver. In the second action, No. 2056, Texahoma Realty Company, W. B. Skirvin, and M. A. Luty were named as defendants and the complaint alleged that the stock of the corporation was divided into 10,000 shares, of which she owned 3,333 shares; that the certificates belonging to plaintiff

670

were kept in a safety deposit box held jointly by her, W. B. Skirvin, and O. W. Skirvin; that W. B. Skirvin, without authority, abstracted and removed such certificates, either forged or caused to be forged her name thereon, and then caused new certificates to be issued in his name or in the names of his nominees; that by purported action of the officers, directors, and shareholders, the stock was increased to 50,000 shares; that 25,000 shares of the additional stock were issued to Skirvin Hotel, Inc., and 15,000 shares to W. B. Skirvin; that W. B. Skirvin and M. A. Luty endorsed checks payable to plaintiff and belonging to her and placed the proceeds in the bank account of Texahoma Realty Company; and that W. B. Skirvin and M. A. Luty had declined to furnish plaintiff information concerning the corporation and also refused to permit her or her auditors to have access to the books and records. She prayed that W. B. Skirvin be required to surrender the 3,333 shares of stock belonging to her; that the additional shares of stock issued wrongfully be cancelled; that she have an accounting; that the books and records be made available to her; and that a receiver be appointed. And in the third action, No. 2057, Skirvin Hotel, Inc., W. B. Skirvin, and M. A. Luty were joined as defendants. The complaint alleged that the stock of the corporation was divided into 500 shares, of which plaintiff owned 148 shares; that her stock was kept in a safety deposit box held by her jointly with W. B. Skirvin and O. W. Skirvin; that W. B. Skirvin had without authority abstracted and removed such shares and forged or caused to be forged the name of plaintiff to an endorsement blank thereon; that according to her information, W. B. Skirvin had caused such certificates to be cancelled and new certificates issued in his name or the names of others; that W. B. Skirvin and M. A. Luty had without authority endorsed checks payable to her and belonging to her and deposited the proceeds thereof to the credit of Skirvin Hotel, Inc.; that the management of the Skirvin Hotel had not been for the best interests of the stockholders; that plaintiff was entitled to an audit and report of the affairs of the corporation; and that W. B. Skirvin and M. A. Luty refused to permit plaintiff or her auditors to have access to the books and records. She prayed that her stock be restored; that the records be made available to her and her auditors; and that a receiver be appointed. Answers were filed; and Marguerite Tyson and O. W. Skirvin

intervened in each case, alleging their ownership of stock and aligning themselves with the plaintiff.

In May, 1938, W. B. Skirvin, Pearl R. Mesta, Marguerite Tyson and O. W. Skirvin entered into a trust agreement reciting that they each owned stock in Texahoma Realty Company, Skirvin Hotel, Inc., and American Oil & Refining Company, and stating the respective shares in each instance; and providing that such stock be deposited with W. B. Skirvin and O. W. Skirvin, as trustees, that the legal title thereto be vested in the trustees, that they have the right to vote, mortgage or pledge the stock but not to sell it or any of the assets of the corporations, that it be voted as a unit at all meetings of stockholders, that the trustees elect themselves as directors of the several corporations and also of Broadway Development Company, that after being elected directors they cause W. B. Skirvin to be elected president and O. W. Skirvin vice-president of the corporations, that all dividends received be held and used for the betterment of the corporations, that all stock dividends be held and retained by the trustees until the termination of the trust, that the trust continue throughout the lifetime of W. B. Skirvin, that at the termination of the trust the body of the trust property together with accrued interest and other undistributed profits be distributed to Pearl R. Mesta, Marguerite Tyson, and O. W. Skirvin in proportions as they might thereafter agree upon, and that they thereupon pay to M. A. Luty $50,-000, if she be then living, and also certain specified sums to other persons named. O. W. Skirvin executed and delivered to W. B. Skirvin a letter bearing the same date as that of the trust agreement, making reference to the trust agreement, and stating that in the voting of the various stocks the decision of W. B. Skirvin should at all times be final.

In June, 1938, a "decree and dismissal" was entered in cause 2056 determining and adjudicating that Pearl R. Mesta, Marguerite Tyson, and O. W. Skirvin, owned 8330, 8330, and 8335 shares of stock, respectively, in Texahoma Realty Company, confirming such ownership, part as of March 30, 1924, and part as of April 6, 1936, and dismissing with prejudice certain causes of action in the complaint. And on the same day a similar "decree and dismissal" was entered in cause 2057, determining and adjudicating that Pearl R. Mesta, Marguerite

Tyson, and O. W. Skirvin owned 145, 145, and 150 shares of stock, respectively, in Skirvin Hotel, Inc., confirming such ownership, part as of March 30, 1925, and part as of December 7, 1926, and dismissing with prejudice certain causes of action contained in the complaint. In May, 1943, Texahoma Realty Company and W. B. Skirvin filed in No. 2056 a motion to vacate and set aside the decree; and at the same time Skirvin Hotel, Inc., and W. B. Skirvin filed a like motion in No. 2057. Both motions are still pending.

In June, 1942, Pearl R. Mesta and Marguerite Tyson instituted in the United States Court an action against Skirvin Hotel, Inc. It was numbered 1070. The complaint alleged in the first cause of action that Marguerite Tyson had lent sums of money to the company and that the balance due and unpaid was $3,450.51, plus interest. In the second cause of action, it was alleged that Pearl R. Mesta owned 145 shares of stock in the company, that the company leased and operated the Skirvin Hotel, that the officers and directors of the company had mismanaged its affairs in such manner that it had failed to meet its obligations under the lease and otherwise, and that unless a receiver was appointed plaintiff would suffer irreparable injury. The prayer was that Marguerite Tyson have judgment and that a receiver be appointed. On the same day, Pearl R. Mesta instituted in the same court an action against Texahoma Realty Company. It was numbered 1071, and the complaint charged that plaintiff had lent to the company money in the aggregate amount of $171,375.11; that plaintiff owned 8330 shares of stock in the company; that a mortgage covering the Skirvin Hotel was in default; that funds belonging to the company had been diverted and used for other purposes; that there had been a lack of diligence in the collection of rents; and that unless a receiver was appointed, plaintiff should suffer irreparable injury. The prayer was for judgment in the sum named and the appointment of a receiver. Answers were filed in these cases.

In July, 1942, an order was entered consolidating causes 2055, 1070, and 1071 for all purposes; and on the same day an order was entered in the consolidated cause appointing Fenton J. Baker receiver for the properties of Texahoma Realty Company, Broadway Development Company, and Skirvin Hotel, Inc., with full authority to operate the Skirvin Hotel and the Skirvin Tower. In April, 1943, Texahoma Realty Company and Skirvin Hotel, Inc., each filed a motion to vacate the order of consolidation and a motion to vacate the order appointing the receiver. In May, 1943, affidavits of disqualification of Honorable Edgar S. Vaught, judge of the court, made by W. B. Skirvin, were filed in Numbers 1070 and 1071. The court struck the affidavits from the records, denied the motions to vacate the order of consolidation, and denied the motions to vacate the order appointing the receiver. Texahoma Realty Company, Skirvin Hotel, Inc., and W. B. Skirvin joined in an appeal from these orders. Thereafter, Texahoma Realty Company, Skirvin Hotel, Inc., and W. B. Skirvin filed in the court below a joint motion to wind up the receivership. The prayer was that the receiver be discharged, the receivership be terminated, and the properties restored to their respective owners. The motion was denied, an appeal was taken from that order, a supplemental transcript was filed in this court, and both appeals are before us on the original and supplemental transcripts.

Sections 128 and 129 of the Judicial Code, 28 U.S.C.A. §§ 225, 227, considered together, vest in this court jurisdiction to review by appeal final decisions and certain interlocutory orders or decrees of the district courts. And in a case of this kind our appellate jurisdiction is limited accordingly. Reeves v. Beardall, 316 U.S. 283, 62 S.Ct. 1085, 86 L.Ed. 1478; Crutcher v. Joyce, 10 Cir., 134 F.2d 809; State Tax Commission of Utah v. United States, 10 Cir., 136 F.2d 903.

An order denying an affidavit of disqualification is neither an interlocutory order from which a separate appeal will lie nor a final decision. McColgan v. Lineker, 9 Cir., 289 F. 253; Baltuff v. United States, 9 Cir., 35 F.2d 507. But the action of the court in striking such an affidavit or otherwise holding it insufficient may be assigned as error and reviewed on appeal from an interlocutory order which is appealable or from the final judgment in the case. Ex parte American Steel Barrel Co., 230 U.S. 35, 33 S.Ct. 1007, 57 L.Ed. 1379. There is no statute authorizing an appeal from an order of consolidation or from an order denying a motion to vacate such consolidation. And in the absence of such a statute, an order of that kind cannot be reviewed on a separate appeal. Jones v. Thompson,

128 F.2d 888; Old Colony Trust Co. v. Kurn, 8 Cir., 138 F.2d 394; Wilson v. Ammann & Jordan, Tex.Civ.App., 163 S.W.2d 660. Similarly, a separate appeal does not lie from an order denying a motion to vacate an order appointing a receiver. Guardian Trust Co. v. Shedd, 8 Cir., 240 F. 689; Grand Beach Co. v. Gardner, 6 Cir., 34 F.2d 836. But on appeal from an appealable order or from the final judgment, all interlocutory orders affecting the rights of the parties in respect of the matters in question between them are open to review. Western Union Telegraph Co. v. United States & Mexican Trust Co., 8 Cir., 221 F. 545.

█ Section 129, supra, expressly authorizes an appeal from an order refusing to wind up a pending receivership. The order of the court denying the petition to discharge the receiver and terminate the receivership is an interlocutory order, but is one from which an appeal may be taken. Lincoln Printing Co. v. Middle West Utilities Co., 7 Cir., 74 F.2d 779; Orth v. Transit Inv. Corporation, 3 Cir., 132 F.2d 938. And on the appeal from it, the preceding interlocutory orders are open to review.

█ Section 21 of the Judicial Code, 28 U.S.C.A. § 25 provides that when a party to an action or proceeding makes and files an affidavit that the judge before whom such action or proceeding is to be heard or tried has a personal bias or prejudice either against him or in favor of the opposite party, the judge shall proceed no further, but another judge shall be designated; that the affidavit shall state the facts and reasons for the belief that such bias or prejudice exists; that the affidavit shall be filed not less than ten days before the beginning of the term of the court, or good cause shall be shown for the failure to file it within that time; and that it shall be accompanied by a certificate of counsel of record that the affidavit and application are made in good faith. While the statute is remedial, due to its nature and the opportunity for abuse of the privilege which it extends to a party litigant, strict compliance with its provisions is required. Scott v. Beams, 10 Cir., 122 F.2d 777; Mitchell v. United States, 10 Cir., 126 F.2d 550. And one of its requirements is that the affidavit must be filed ten days before the beginning of the term of court, or good cause shall be shown for failure to file it within that time.

█ As already indicated No. 2055 was filed in March, 1938, Nos. 1070 and 1071 were filed in June, 1942, and the order of consolidation as well as the order appointing the receiver was entered in July, 1942. W. B. Skirvin consented to both orders, and thereafter orders were entered from time to time in the receivership proceeding. The motions to vacate the order appointing the receiver were filed in April, 1943. Thereafter the attorneys for Texahoma Realty Company, Skirvin Hotel, Inc., and W. B. Skirvin conferred with the judge in respect to the time of a hearing on them, and in the course of the conference the attorneys were advised that the judge planned to leave the district on official business and would not return until early in June. The attorneys then suggested that, on account of the great amount of money which would be wastefully expended in the receivership during that interim, another judge be designated to hear the motions. But the suggestion was not adopted. After all of that had taken place, the affidavits of disqualification were filed on May 24th. And they fail to make any showing of cause for the failure to file them sooner. They are silent in respect of the matter. An affidavit filed long after the time fixed by the statute, and after the party making the affidavit has participated in proceedings and has invoked or sought to invoke the affirmative action of the court in his behalf, without any cause being shown for the delay, does not comply with the exaction of the statute in respect to time. Wyant v. Brennan, 4 Cir., 85 F.2d 920; Tennessee Publishing Co. v. Carpenter, 6 Cir., 100 F.2d 728; Refior v. Lansing Drop Forge Co., 6 Cir., 124 F.2d 440.

Serious questions are presented as to whether W. B. Skirvin was a party within the intent and meaning of the statute, and as to the sufficiency of the facts stated in the affidavits on which to base the charge of prejudice. But since the affidavits were not filed within the time required by the statute, and since no showing was made in respect of the delay, we do not explore these fields.

█ Rule of Civil Procedure 42(a), 28 U.S.C.A. following section 723c, authorizes the consolidation of actions involving a common question of law or fact, and provides that the court may make such orders concerning the consolidated proceedings as may tend to avoid unnecessary costs, or delay. The consolidation of actions for trial which appear to be of like nature and concern themselves with the same or similar questions rests within the sound discretion of the trial court, and its action thereon

will not be disturbed on appeal except for the abuse of discretion. Mutual Life Insurance Co. v. Hillmon, 145 U.S. 285, 12 S. Ct. 909, 36 L.Ed. 706; Turner v. Standard Ice & Fuel Co., 10 Cir., 292 F. 38. Here, the cases which were consolidated involved three separate corporations, but the properties owned by the corporations were parts of an integrated hotel system, consisting of the Skirvin Hotel and the Skirvin Tower. The two hotels had been under a single management, that management was being attacked, and there were common issues running through the three cases. Moreover, the order of consolidation was entered with the consent of all parties to the actions, and there is no affirmative showing of substantial prejudice. Manifestly, the court did not abuse its discretion, either in ordering the consolidation in the first instance or in subsequently declining to vacate the order of consolidation.

■ The order denying the motion to vacate the appointment of the receiver and the order denying the petition to discharge the receiver and terminate the receivership are distinguishable in that the former concerns itself with the question whether the original appointment was improvidently made while the latter is addressed to the question whether under presently existing conditions and circumstances the receivership is no longer necessary, but the two are sufficiently related that they may be considered together. It was the claim of plaintiff and the intervenors in each of the cases which were consolidated that they were stockholders in the corporate defendant, that the property of the corporation was being mismanaged, and that as the result of the mismanagement the property was in danger of being lost in whole or in part to the stockholders. Where it is made to appear in an action by a stockholder for fraud, collusion, mismanagement, or intermingling or diversion of funds by officers of a corporation, that there is danger of the property being lost with a resulting diminution in value of the stock, a United States court has power to appoint a receiver to preserve the property pending determination of the case on its merits. Burnrite Coal Briquette Co. v. Riggs, 274 U.S. 208, 47 S.Ct. 578, 71 L.Ed. 1002; Bankers' Mortgage Co. v. Rupp, 10 Cir., 66 F.2d 992; Orth v. Transit Inv. Corporation, supra.

■ The appointment of a receiver or the refusal to appoint rests in the sound judicial discretion of the trial court, and its action thereon will not be overturned on appeal unless an abuse of discretion is shown. Fosdick v. Schall, 99 U.S. 235, 25 L.Ed. 339; Milwaukee & M. R. Co. v. Soutter, 154 U.S. 540, 14 S.Ct. 1158, 17 L.Ed 604; Commonwealth of Pennsylvania v. Williams, 294 U.S. 176, 55 S.Ct. 380, 79 L.Ed. 841, 96 A.L.R. 1166; Hutchinson v. Fidelity Inv. Ass'n, 4 Cir., 106 F.2d 431, 133 A.L.R. 1061; Lee v. Farmers Co-Op. Ass'n of Mountain View, 189 Okl. 55, 113 P.2d 391. But the power to appoint a receiver with authority to take custody and control of property and operate it as a going concern is a delicate one which is jealously safeguarded, and it should be exerted sparingly. A court should be cautious and circumspect in the exertion of the remedy because perversion or abuse may work great hardship. Kelleam v. Maryland Casualty Co., 312 U.S. 377, 61 S.Ct. 595, 85 L.Ed. 899; Healey v. Steele, 158 Okl. 194, 13 P.2d 140; State v. Creek Realty Co., 167 Okl. 319, 30 P.2d 160; Harrison v. Missouri State Life Ins. Co., 177 Okl. 377, 59 P.2d 774.

■ The power to vacate an appointment improvidently made or to terminate a receivership no longer needed is a necessary incident to the power to appoint in the first instance. And where the appointment was not illegal but the reason or necessity for continuing it has ceased, the property should be discharged from the receivership and restored to its owners. Milwaukee & M. R. Co. v. Soutter, 69 U.S. 510, 2 Wall. 510, 17 L.Ed. 900; Wagoner Oil & Gas Co. v. Marlow, 137 Okl. 116, 278 P. 294; Fidelity Trustee & Deposit Co. v. Certified Oil Properties, 189 Okl. 673, 119 P.2d 83.

■ The basis on which the trial court rested its action in continuing the receivership was mismanagement of the properties by the owners and operating company, under the direction of W. B. Skirvin, as manager of the hotels, and his incapacity on account of advanced age to manage the hotels efficiently. The value of the Skirvin Hotel is in excess of $1,000,000, and that of the Skirvin Tower exceeds $1,280,000. At the time of the appointment of the receiver, Texahoma Realty Company owed a local bank $388,200, secured by first mortgage on its properties; owed taxes in the amount of $11,452.47, a payroll of $108.75, current accounts of $855.88, an insurance note of $2,717.17, and equipment notes of $4,606.27; and according to its books, owed Pearl R. Mesta and Marguerite Tyson in the aggregate $174,825.62. Broadway De-

velopment Company owed the local bank $407,926.68, all of which, except $21,000, was likewise secured by first mortgage on its properties; owed taxes in the amount of $30,032.63, back interest of $23,321.96, salaries of $495.11, current accounts of $3,296.91, notes for equipment and for insurance $3,334.75; and according to its books, owed George Tyson $39,200, and W. B. Skirvin $10,156.04. And Skirvin Hotel, Inc., owed taxes in the amount of $2,963.89, salaries of $3,959.35, and accounts payable of $19,449.37. There was a tremendous increase in the volume of business and profits during the first year of the receivership over that of the last year under the management of the owners, directed by W. B. Skirvin. The gross income from rental of rooms increased from $147,452.90, with an operating profit of $101,955.43, to $304,124.23, with a profit from operations of $221,987.11; the sale of food and beverages increased from $174,372.37, with an operating profit of $4,638.90, to $340,963.49, with an operating profit of $54,546.37; the net profits in the aggregate from all operations, without considering depreciation, increased from $9,775.42 to $175,044.78; and at the time of the hearing below the cash balance on deposit in bank was approximately $120,000, and it doubtless has increased substantially since. But the condition of the hotels during the last year under the management of the owners and directed by W. B. Skirvin was not due entirely to mismanagement. It was due in large measure to depressed economic trends extending over the previous ten years, or thereabouts, of which trends we take judicial notice. Likewise the increase in business and profits during the first year of the receivership was not due altogether to extraordinary efficiency of the receiver who resides in Dallas, Texas, is manager of a hotel there, comes to Oklahoma City on an average of once a month, and remains there a day or so. In large part, the increase had its source in a rapid shift from depressed economic conditions to markedly prosperous business levels throughout the country growing in part out of general war activities and also to local war activities in and near Oklahoma City. While the upward curve in the business of the hotels was strikingly sharp, it was not greatly different from that of other local hotels of comparable size and class. Evidence was adduced indicating that certain things were done during the management of the properties under the direction of W. B. Skirvin which may be open to the charge of being injudicious, but they are not of decisive significance. W. B. Skirvin is more than eighty years of age, and if the properties are restored to their owners he may again become the active manager of the hotels. But advanced age alone of an owner or manager of property is not enough to warrant the appointment of a receiver or the continuation of an existing receivership. We fail to find in the record as a whole any sustainable basis for the conclusion that there was gross mismanagement of the properties by the corporations, under the direction of W. B. Skirvin, or that he is incapacitated by age or otherwise to manage them with reasonable efficiency.

By petitions in intervention, the local bank sought the foreclosure of its mortgage liens and prayed that the receiver previously appointed be continued during the pendency of the actions, or in the alternative that a receiver be appointed. But no further action was sought or taken in that connection, the bank later sold and assigned all of its notes and security to George B. Tyson' for a cash consideration fully paid, and Tyson has not exerted any effort in respect to the foreclosure of the liens. Prior to and since the appointment of the receiver, efforts were made to refinance the properties; and while there were offers to furnish the funds for that purpose on certain conditions, all parties in interest have failed to come to an agreement, and nothing is presently being accomplished in that behalf. Meantime, the receivership is an operating receivership, apparently of indefinite future duration.

We think the denial of the petition to discharge the receiver and terminate the receivership was an abuse of discretion. Therefore the order of denial is reversed and the causes remanded with directions to discharge the receiver and wind up the receivership.